This is a suit for damages arising out of a collision between a made-up Ford truck owned and being driven at the time by the plaintiff, Troy Crow, and a G.M.C. truck belonging to the Pelican Furniture Company, Incorporated, of Baton Rouge, Louisiana, and being in charge of and driven by one of the defendants, John H. Grand, Jr. The State Farm Mutual Automobile Insurance Company carried public liability insurance on the G.M.C. truck and is joined as defendant in the case. The collision took place about four miles west of Slidell in the Parish of St. Tammany, at about 6:30 p.m. on February 7, 1941, when it was already dark. The highway at that point is of standard concrete pavement, eighteen feet in width with the usual black stripe running in the center, and is straight for a considerable distance. The demand of the plaintiff is for $9,320.80 of which $9,000 is for personal injury, pain, suffering *Page 106 
and resulting disability, $280.80 for loss of earning and $50 for damages to his truck.
In his petition plaintiff alleges that he was driving west from the town of Slidell in a careful and lawful manner, proceeding on his right lane of travel on the highway and that on reaching a point one mile west of the settlement of Bonfouca, he noticed a truck, painted white, occupying its proper lane of travel also, approaching him from the opposite direction. He avers that he then reduced the speed of his truck and guided it to his right, proceeding along the extreme north edge of the highway; that when his truck and the approaching white truck were less than five hundred feet distant from each other the truck driven by the defendant, John H. Grand, Jr., which had been following the white truck, suddenly pulled from behind that truck at an excessive speed, in an effort to pass ahead of it to its left and collided with his truck in the north lane of the concrete part of the highway which he was properly traveling on.
The defendant, Grand, is charged with negligence in the following particulars: (1) Driving a heavy truck along the highway at an excessive and unlawful speed; (2) Suddenly and without giving any warning driving his truck onto his left or the north side of the highway and there striking plaintiff's truck; (3) Attempting to pass another vehicle traveling in the same direction he was going without first ascertaining that the highway in front of him was free of approaching traffic a safe distance away to permit him to do so in safety; (4) Failing to have his truck under proper control.
The defendants filed a joint answer in which they admit that a collision took place at the place and time alleged by plaintiff but deny all charges of negligence made against the driver of the G.M.C. truck, John H. Grand, Jr. They aver on the contrary that he took all necessary precautions in preparing to pass ahead of the truck in front of him, such as giving proper warning and looking to see if the lane of travel on his left was clear of on-coming traffic. They further allege that when about one hundred and fifty feet from the rear of the truck ahead of him, he looked and observed no lighted vehicles coming, so he proceeded gradually to his left but before he had completely veered his truck in that direction its lights were thrown on an object he had not seen before and which turned out to be the approaching unlighted truck of the plaintiff. He tried to cut back to his right at once in an effort to get out of its way but it was then too close to him and a collision became unavoidable. They further aver that the roadway was wet and one could not safely operate a truck in the darkness without lights. All of this negligence on the part of the plaintiff, they aver, was the sole cause of the accident and further, they plead the same in the alternative, as contributory negligence on his part, in the event it should be held that the driver of the G.M.C. truck was guilty of any negligence. They also plead under the facts and circumstances then existing, that plaintiff had the last clear chance to avoid the accident.
After trial in the district court, there was judgment in favor of the plaintiff in the sum of $3,750. Defendants appealed and plaintiff has answered the appeal praying for an increase in the amount of the award to the sum originally prayed for by him.
The defendant, Grand, was conveying a party of Boy Scouts from Baton Rouge, Louisiana, on a fishing trip to Clermont Harbor, Mississippi. One of the boys, Donald Lockwood, was seated with him in the cab and all the others were in the back of the truck which was covered with a tarpaulin. As the driver of the white truck proceeded on, without knowing most probably, that an accident had occurred, and there was no one else on or around the highway at the time, the only eye-witnesses were the drivers of the respective trucks and the boy, Donald Lockwood.
Plaintiff testified that he had come to Slidell on the morning of the accident and stayed there until about 5:30 that afternoon when he left to go back to his home at Lacomb. He had had trouble with the lights of his truck and had spent some time trying to repair them but in doing so broke the right hand headlight. He did not get another one then because, he said, he had an extra one at his home which he could use. He states that he connected the left front headlight with the generator by means of a wire and insists that it was burning when he left Slidell and also when the accident happened. He states that he was traveling at about thirty miles per hour and for quite a distance observed the lights of a vehicle coming towards him from the east and later on those of another vehicle following *Page 107 
that one. As the leading vehicle approached his truck he noticed that it was a truck painted white. It was being driven in the lane of travel to the driver's right as was also the vehicle that was following it. He says that as he was about to meet the first truck, the vehicle behind it which turned out to be the G.M.C. truck driven by the defendant, Grand, "whipped out" from behind it. At that time the front end of his truck was almost at the rear end of the white truck. The driver of the other truck then turned to his right, cutting his wheels back, and as he did so the two trucks collided, his truck striking the defendant's truck on the left side at about the door. He estimates that at the time the defendant's truck pulled over to its left to pass ahead of the white truck, he was one hundred feet back of it and was traveling between fifty and fifty-five miles an hour.
The defendant, Grand, testified that he had been following the white truck for some eight or ten miles, holding back of it at a distance of from one hundred to one hundred and fifty feet. He made several attempts to pass ahead of it but each time was confronted with lights coming toward him so he pulled back to his side of the road. Finally in one such attempt, the road being straight, he pulled gradually to his left, looking ahead and as he did so, failing to see any light or anything else, he speeded up in order to pass ahead of the white truck. When the front end of his truck was about even with the rear end of the white truck, his lights shone on some object in his path which turned out to be the plaintiff's unlighted truck. He turned to his right in an effort to pull back of the white truck but as he was in the act of doing so, his truck was hit at about the door by plaintiff's truck.
The testimony of the young boy, Donald Lockwood, corroborates that of Grand to the extent that he also, on looking ahead on the highway as the truck was being turned left from its right lane of travel, did not see any vehicle with lights showing, approaching from the opposite direction. After the accident, he states, a man he took to be the plaintiff told him that his lights had gone out further down the road.
It is admitted that the collision took place on the north lane of traffic on the paved portion of the highway. That of course was the plaintiff's right side of the road and the defendant, Grand's left side. The photograph of the latter's truck which was offered in evidence shows that it was struck on its left hand side just in front of the cab door. After the accident the plaintiff's truck was found to be altogether on its right side of the highway and the other truck resting diagonally across the pavement, its rear end being near the north edge and the front end close to the south edge. All the proof goes to show that the driver of that truck had violated Rule 7, Subsection (c), Section 3 of Act 286 of 1938, which prohibits the driver of a vehicle to drive to the left of the center line in the highway in order to overtake and pass another vehicle going in the same direction, unless such left side "is clearly visible and free from oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be made in perfect safety." The rule provides further that whenever an accident happens under such circumstances, "the responsibility thereof shall rest prima facie upon the driver of the vehicle doing the overtaking or passing."
The important question which next arises is whether the defendant, Grand, has absolved himself of the responsibility which the law prima facie places on him for the accident. To put it in another form, there is a presumption of negligence on his part and for him and his co-defendant to escape liability, it was necessary for them to successfully rebut that presumption. This question takes into account the alleged negligence of the plaintiff in failing to have lights displayed on his truck and, assuming that there were no lights or that what lights he had did not comply with the regulations of the State statute just referred to, as prescribed therein under Subsection (g) 2 and others of Section 9, was that the proximate cause of the accident rather than Grand's own negligence.
Plaintiff's truck was what is referred to as a home-made truck. An idea of its condition can be obtained from the fact that he had paid $80 for it and at the time of the accident he valued it at $50. It is conceded that it had no side or clearance lights and that the right headlight was not connected on the day of the accident. He testified that the left front headlight was burning because he had been cautioned by a State traffic officer while in Slidell about the lights and he had connected the left front one himself. This traffic officer who came upon the scene of the accident shortly after it happened testified that the light *Page 108 
was on and so does another witness who is an uncle of the plaintiff. From all of this testimony however, even if it be held to show that there was a light burning in that headlight lamp, it was no stronger than a candle-power light. On the other hand we have the testimony of the defendant, Grand, who states positively that there was no light showing at all on the truck, and that of young Lockwood who says that he did not see any. Another young boy who was also in Grand's truck stated that he looked at the plaintiff's truck after the accident and did not see any lights on it.
In the face of this conflicting testimony the district judge held that the left front headlight of plaintiff's truck was burning at the time of the collision and we are unable to say that he manifestly erred in doing so. Although the light did not comply with the light regulations of the statute, still it would seem that it served some purpose as a warning in the dark, of the presence of an object on the highway. Besides it is noted that the provisions of the statute regarding the display of lights of vehicles does not place the prima facie responsibility for an accident on the party who fails to comply with its regulations as does the provisions with regard to the party overtaking or passing a vehicle ahead of his on the highway.
But aside from this, and assuming that there was insufficient illumination on the plaintiff's truck to afford a warning of its presence, it is difficult to understand how it was not made visible to the driver of the G.M.C. truck by the headlights of the white truck ahead of him as well as by his own headlights. The evidence is to the effect that both these trucks had good headlights burning at the time and if as he states, Grand was following the white truck by one hundred to one hundred and fifty feet, there is no reason why he should not have seen plaintiff's truck which was bound to have been in the beam path of the lights of both these trucks at one time or another, unless, as held by the district judge, he was not keeping a proper look-out ahead and failed to see what he should have seen. Had he been looking as he should, he would have seen plaintiff's truck before he did, and should have had ample time to get to his right side of the road again, back of the truck he had been following. His negligence was the real and proximate cause of the collision and he and his insurer were correctly held liable in damages to the plaintiff. We think that under the facts as shown it is hardly necessary for us to say that the doctrine of the last clear chance has no application here.
Plaintiff sustained a rather severe injury to his left eye; a bone right under the eye was crushed and the eye itself cut open. An operation became necessary and even so, according to the report of his doctor, he was left with a paralysis of the muscles which elevate the lid which he can no longer control, and the result is that the lid drops completely over the eye. The outer and lower portion of the rim of the orbit is irregular and the orbit itself is deformed, this accounting for the sunken eyeball which he has. The sunken eyeball in turn causes an unequal pull on the muscles which keep the two eyeballs properly aligned and even when the left eyelid is kept open and he can see through the eye, his vision then becomes double. The doctor is of the opinion that although the drooped eyelid could be improved surgically in order to give a better cosmetic effect, it is better to leave it alone as the condition of double vision would then become most difficult, if not impossible to correct. As we see it, the existing condition amounts in effect to the loss of the use of his eye.
In addition plaintiff sustained an injury to his cheek bone and a cut on one of his knees. The district judge allowed $3,500 for the loss of the use of the eye and his other injuries, as well as for the pain and suffering. This, we believe is a just and fair award. He was allowed $50 for the loss of his truck and $200 for loss of earnings. The $50 award is found to be properly made, but we are unable to find sufficient proof on which to base the $200 award for loss of earnings. At the time of the accident plaintiff had been unemployed for quite a while and he seemed to have no prospect of any immediate work. The judgment will therefore have to be reduced by the sum of $200.
For the reasons stated, it is now ordered that the judgment appealed from be amended by reducing the total amount of the award from the sum of $3,750 to the sum of $3,550, and as thus amended, it be affirmed. *Page 109