Plaintiff sues to collect $40,228.50 from the defendants, Leonard Truck Lines, Inc., and its public liability insurer, Commercial Standard Insurance Company, for personal injury and hospital and medical expenses incurred as the result of an accident involving a truck loaded with logs being driven by plaintiff and a truck belonging to defendant, Leonard Truck Lines, Inc., being driven by one James C. Geter. Plaintiff alleges the following specific acts of negligence on the part of the said Geter:
"1. Said Jeter was negligent in not operating his said van at such a rate of speed that he had it under control at all times.
"2. Said Jeter was negligent in not observing the truck approaching from the North and going South, or alternatively if he did observe it, was negligent in not taking extraordinary precautions to fall into line behind the truck being driven by petitioner in a safe manner.
"3. Said Jeter was negligent in not observing that petitioner because of the hill as aforesaid, was driving at a very slow rate of speed, or in the alternative if he did observe that petitioner was proceeding at a very slow rate of speed he was negligent in not immediately slowing down the speed of his van so as to enable him to fall in behind petitioner's truck in a safe manner.
"4. Said Jeter was negligent in not keeping his van at such a distance behind the truck of petitioner that he would be able to slow or stop it in the event of some emergency arising.
"5. On information and belief, petitioner pleads that the said Jeter was about to drive his van around the truck of petitioner and pass it, and upon this allegation, said Jeter was negligent in not first ascertaining that the road was clear ahead of petitioner, or in the alternative, if he did observe the approaching truck, he was negligent in not slowing down or stopping his van at this point, and his proceeding to try to pass was gross and wilful negligence."
His demand for damages is itemized as follows:
1. Loss of his sight in his right eye ........... $10,000.00 2. Loss of hearing in his right ear ............. 5,000.00 3. Damage to nerves in his head causing paralysis of the right side of his face ..... 5,000.00 4. Fractures of the 1st, 2d 3rd, 4th, 5th, 6th, 7th and 8th ribs on the left side of his body, and 1 rib on right side ........ 5,000.00 5. Severe cuts and bruises on his left arm and on his head and face .................... 2,500.00 6. Acute pain and suffering ..................... 7,500.00 7. Loss of time from work and partial disability to do and and perform his usual gainful work .......................... 5,000.00 Total ......................... $40,000.00
Defendants' amended and supplemental answer denies the substantial allegations of plaintiff's petition and sets up the following defense:
"(a). That the said log truck prior to said collision had been driven over to the right shoulder of the road off the paved portion of the highway by the plaintiff, and there was parked by plaintiff headed north, for some reason unknown to respondents, and the said Geter, driver of the said Leonard Truck, seeing said log truck parked on the shoulder of the right *Page 311 
side of the road as he approached same going north along the highway, and when he was within 50 feet or thereabouts from said log truck, the said log truck without warning headed out in a northerly direction on to the paved portion of the highway directly in front of the said Leonard Truck, and as it was then too late for the said Geter to stop his truck it was necessary that he attempt to pass to the left of the said log truck on the paved portion of the highway, but just as he did so a large oil field truck was approaching both of the said trucks from the north and passing the said log truck, thus creating a dangerous condition and trap, making it impossible for the driver of the said Leonard Truck to go around and pass the log truck in safety or on the opposite side of the highway, but the said Leonard Truck driver was forced to drive the truck close to the said log truck to avoid a head on collision, and in doing so a log protruding from the log truck on its left side caught into the van of the Leonard Truck causing the Leonard Truck to turn directly in front of the log truck across the highway heading east where it was stopped by its driver; that it was the duty of the said plaintiff to have looked in both directions along the highway prior to driving upon the paved portion from the shoulder of the road, that he could have easily seen the approaching Leonard Truck, which was almost about to pass the log truck when he drove upon the highway, and that by his said actions and negligent manner in the operation of said log truck, he was guilty of gross negligence, all of which will be shown more fully upon trial hereof.
"(b). That the said negligent manner in which the said plaintiff operated said log truck caused the said Geter to drive in front of the said log truck and close to it in order to avoid a collision with an approaching oil field truck, and that in doing so his van caught a crooked log which unlawfully protruded out from said log truck resulting in said collision.
"(c). That by reason of the said crooked log protruding from said truck too far to the left of same, and the further fact that plaintiff emerged from the shoulder of the road directly on to the highway in front of the said van into traffic without warning, either or both, such damages as may have been sustained by plaintiff were due to the fault of plaintiff as aforesaid."
At the time of his injury, plaintiff was employed by DeSoto Lumber Company, a partnership. Compensation insurance was carried on its employees with Consolidated Underwriters, T. H. Mastin Company, Agents. The insurer paid plaintiff a total of $2,485.50 and took a subrogation from him of his rights to that extent against defendants. Consolidated Underwriters intervened in this suit to recover the above sum. All parties agree that if plaintiff recovers judgment, intervenor is entitled to be paid.
The District Judge, giving only oral reasons for judgment, awarded plaintiff $7,228.50 and recognized the claim of intervenor for $2,485.50. From this judgment defendants have appealed.
One of the principal defenses to this suit is the claim that plaintiff had parked the log truck he was driving on the short fairly level place on the top of the hill and that when the Leonard Truck was about 75 feet from it, pulled the log truck off the shoulder of the road on to the paved highway directly in front of the Leonard truck, thus creating an emergency. The driver of the Leonard truck, being unable to stop, undertook to pass the log truck, but was then confronted with a pipe truck going south and was compelled to strike the log truck from the rear or the pipe truck head on. He chose the first alternative. This phase of the case will be referred to later in this opinion.
Facts undisputed or clearly proven are:
1. The accident happened December 1, 1943 at about 2:30 o'clock p.m. The weather was clear and the road dry.
2. The road is a concrete slab 18 feet wide with black line down the center and graveled or dirt shoulders on either side. It runs approximately north and south and is straight for long distances both north and south of the scene of the accident. There are three hills, one near the crest *Page 312 
of which the accident occurred, one called the Galaspy Hill, the top of which is a half or three quarters of a mile south of the accident, and one about the same distance north. The hill on which the accident occurred has a short nearly flat place on top.
3. Plaintiff was driving north in a Chevrolet truck without cab with trailer loaded with logs 14 and 16 feet long of medium size, and was moving slowly uphill near the top. Geter was driving the same direction in what is known as a van truck with a cab and moving van, at a speed of not less than 35 miles per hour, most likely much faster. A negro named Eddie Lawrence was driving a large truck south loaded with pipe. The three trucks reached the top of the hill at very nearly the same time. Geter tried to pass the log truck and get back on the right side of the road, but seeing the pipe truck in front of him decided to collide with the rear of the log truck in preference to a head on collision with the pipe truck. When the collision occurred, the chains holding the logs on the truck were broken and one of the logs entered the van part of the Leonard truck at about what would have been the front right hand corner if the van had been square on the front end, but it was curved on the front end.
4. Plaintiff was rather severely injured. Nine of his ribs were fractured, he was blinded in his right eye and is deaf in his right ear, and he had some other injuries, as alleged in his petition.
5. Geter was acting in the scope of his employment with defendant, Leonard Truck Lines, Inc., at the time of the accident and the other defendant had the truck covered with a public liability policy.
6. After the accident the log truck was on the right hand side of the road with the right wheel of the cab just off the pavement and the right rear wheel of the trailer part of the truck was right at the edge of the pavement. One log was inside the moving van and other logs were scattered on the highway.
On the question of whether or not plaintiff had parked his truck on the shoulder of the road and pulled off the shoulder on to the road in front of the van, Geter, the driver of the van, says that he was and that he saw the log truck parked there when he was on top of the Galaspy Hill. Reuben D. Mathews, who had just passed going south and was about at the top of the Galaspy Hill when the accident occurred, says he saw a truck parked near where the accident occurred which he believes was the truck that plaintiff was driving.
Tom Truly was driving south. He was on top of the hill to the north about one-half mile away. He says he saw the log truck parked off the road. About the time he saw the van, the log truck started up and the van struck it. He says he was three or four hundred yards from the accident. On cross-examination he said he could not tell if the truck was stopped but that it was off the road. He says that he saw some marks on the shoulder of the road indicating the truck had been off the highway and on the shoulder of the road.
S.E. Hammond was on the same hill as Truly. He says when he first saw the log truck it was pulling on the road from the shoulder. He saw the trucks after the accident and saw the log in the van. He works with Geter now. Says he saw tracks on the shoulder of the road where the truck had been parked. Saw only one vehicle on the road between him and the log truck. He says the van had not come in sight when the log truck pulled on the road, but came up about that time. He had two soldiers in the truck with him. One of them called attention to what was happening on the next hill.
Eddie Lawrence, driver of the pipe truck meeting the log truck and van, says he saw the log truck pull off the shoulder on to the road. The van truck tried to go between the log truck and the pipe truck. The witness says he pulled off the road to the ditch to let the van get by. He says he was 75 feet from the log truck when the accident occurred. He did not say whether the log truck was stopped or not but says it was on the shoulder of the road. He says the first he saw of the van was when it struck the log truck. *Page 313 
Willie Mitchell was driving another truck some distance back of Lawrence. He says the log truck was parked on the shoulder of the road as far as he could tell. Says he saw the driver getting in the log truck and saw the log truck pull on the road when he, witness, was coming across the other hill to the north. At another place he says he was at the bottom of the hill. When asked about how far the Leonard truck was from the black line, he said: "I couldn't tell you because I was coming uphill and at that distance I could not tell no more than I saw three trucks there together.
Opposed to these six witnesses who claim that the log truck was either parked or moving on the shoulder of the road, and that it pulled on to the road, is the testimony of the following witnesses. Plaintiff says that he stopped his truck before going on to the paved highway, some two miles south of the scene of the accident, to tighten the chains on the logs and that he never stopped any more and at the time of the wreck was driving slowly uphill in second gear on the right hand side of the paved portion of the highway.
J.D. McNaughton had been repairing fence two or three hundred yards from the scene of the accident. He saw a truck going north. When he first saw the trucks involved in the accident, plaintiff was on top of the hill and did not stop his truck. He saw the Leonard truck back of the plaintiff. The log truck was not going fast. The Leonard truck was going 35 or 40 miles an hour. The log truck, the van truck and the pipe truck all got to the scene of the accident about the same time.
E.D. Gour was hauling logs on the same job with plaintiff. He was driving a Ford truck with cab and trailer. He says he left plaintiff about one-fourth mile from the paved road. Met two pipe trucks going south. He stopped his truck for awhile about 30 feet north of the Franklin house, which is very near the scene of the accident. He says he looked back and saw plaintiff coming over the Galaspy Hill and that he then started his truck and proceeded north.
Herman Lawson, State Policeman, and Ellis Spears, Deputy Sheriff, visited the scene shortly after the accident. Geter told them that the log truck pulled off the shoulder of the road in front of him; that he was driving about 50 miles per hour and could not stop, but tried to go around the log truck and saw the pipe truck meeting him. These two witnesses say that they looked for tracks on the shoulder of the road and saw none.
A.V. Austin, Sheriff, also went to the scene. He talked with Geter and asked if he was hurt and Geter said no. This witness contradicted some of the witness Mathews' testimony, but his testimony is not very important.
Defendants claim the log that went into the van was crooked and sticking out to the side, the reason that it went into the van, but the evidence is conclusive that the log was straight.
Apparently what happened was that Geter, as he says, got the cab part of his truck by the back end of the log truck and seeing the pipe truck in front of him, pulled to the right, causing the front end of the van to contact the logs.
If, as plaintiff and his witnesses contend, he never stopped his truck and was driving up the hill at a slow rate of speed, there can be no doubt that the accident was caused wholly and solely by the negligence of Geter, the driver of the truck that ran into the log truck from the rear, and there is nothing to decide except the amount of the award to be made to plaintiff.
If, on the other hand, plaintiff was parked on the shoulder of the road and pulled on to the paved part of the road as Geter and his witnesses contend, is Geter in any better situation from the standpoint of his negligence? By his own testimony he saw a log truck parked on the shoulder of the road when he was half a mile away from it. This truck was either the one plaintiff was driving or the one E.D. Gour was driving. In either event, he had unobstructed view of it during all the time he was overtaking it. Admittedly he could not see beyond the top of the hill both trucks were climbing. *Page 314 
If he had been keeping a proper lookout and driving at a moderate rate of speed, he could have avoided the accident by stopping or slowing down behind the log truck.
Plaintiff and Geter are equally interested witnesses. Geter has brought suit against the DeSoto Lumber Company, plaintiff's employer, and its public liability insurer. The testimony of some of the other witnesses for defendants is unsatisfactory, particularly that of Tom Truly, who was some distance from the accident, and also S.E. Hammond, who apparently did not see anything until the soldier called his attention to it.
[1] We are of the opinion that the preponderance of the evidence, oral and physical, is in favor of the plaintiff. The Leonard truck was evidently being driven at an excessive rate of speed in violation of law. Act No. 286 of 1938, Sec. 3, Rule 4, Subsec. (c), Dart's Statutes, § 5207. The driver gave no warning of his approach by sounding his horn or otherwise and was overtaking and passing another vehicle on the crest of a hill, also in violation of law. Act No. 286 of 1938, Sec. 3, Rule 7(b, c, d), Dart's Statutes, § 5212(b, c and d).
"Ordinary care on the part of a person operating a car along a public highway in the daytime requires him to observe a plainly visible parked automobile in time to avoid a collision, and the fact that a car stops in plain view of the driver of another car should put him on notice to proceed with caution," 2 Blashfield Cyclopedia of Automobile Law and Practice, § 1222, *page 361. 
[2] The medical testimony amply supports the award made to plaintiff by the district judge. Plaintiff has lost the sight in his right eye and the hearing in his right ear. He evidently suffered a good deal of pain from the fractured ribs and other injuries. He suffered concussion of the brain that rendered him unconscious for several days. He is unable to pass physical examination where that is required for industrial employment. He is not shown to have an education that qualifies him for clerical work, or any other than manual labor. His field of employment is therefore very limited.
[3] After argument in this Court, plaintiff filed an answer to the appeal praying that the award be increased. In order to have an answer to an appeal considered, it must be filed before argument. Article 890, Code of Practice; Goynes v. St. Charles Dairy, Inc., La. App., 197 So. 819.
For the above reasons, judgment appealed from is affirmed, with costs.