63 So.2d 459 (1953)
JOHNSON
v.
LOUISIANA COCA-COLA BOTTLING CO., Limited.
No. 20019.
Court of Appeal of Louisiana, Orleans.
February 23, 1953.
Rehearing Denied March 23, 1953.
May & Carrere and Herman J. Schulze, New Orleans, for appellant.
Joseph Rosenberg, New Orleans, for appellee.
REGAN, Judge.
Plaintiff, Walter Johnson, initiated this suit against the defendant, Louisiana Coca-Cola Bottling Company, Ltd. endeavoring to recover the sum of $25,000.00 for loss of his left eye as the result of an explosion of a bottle of coca-cola on June 10th, 1951, and in consequence thereof he was unable to work and was thus deprived of his earning capacity.
Defendant answered and generally denied the allegations of the petition, however, it admitted that it bottles and dispenses coca-cola, but insisted that the doctrine of res ipsa loquitur, which the plaintiff seeks to invoke, is inapplicable to this case.
After a trial on the merits there was judgment in favor of plaintiff in the sum of $15,000 and defendant has prosecuted this appeal.
The record reveals that on June 7th, 1951, the defendant made a delivery of six cases of coca-cola to Mike Badalamenti, a storekeeper in Oakville, Louisiana; on the morning of June 10th, 1951, Badalamenti sold and delivered one or two cases of this beverage to Mabel Williams, plaintiff's sister; that Mabel Williams, who was giving a party following the baptism of her husband, invited plaintiff, her brother, to her home and asked him if he would ice and later serve the coca-cola to her guests; about 10:30 a. m. he carried two cases of the beverage from Mabel's kitchen to her rear yard, chipped seventy-five pounds of ice in a "wooden keg" and then placed one and one-half cases of the coca-cola on top of the ice; he finished icing the drinks about 11:00 a. m.; at approximately the *460 hour of 2:00 p. m., which was after the baptism, the party ensued and plaintiff was requested to serve one of the guests a coca-cola; he leaned over the keg, but before he touched anything contained therein, one of the bottles exploded and the neck therefrom struck him in the eye, resulting in the ultimate loss thereof.
Plaintiff contends that he is not at fault for the accident; he is informed and believes that the bottle was defective or that it was too highly charged, either of which caused the explosion; however, he is not actually acquainted with the true reason, but that the cause thereof is within the knowledge of the defendant and therefore, this case falls within the purview of the doctrine of res ipsa loquitur.
Defendant contends that the "bottles used by it are made by the Chattanooga Glass Company, and are made subject to rigid specifications, and under strict supervision and inspection by the manufacturer and representative of respondent. That the Bureau of Standards in Washington has recommended that the minimum glass content of six ounce bottles be twelve ounces, and that each Coca-Cola bottle has more than fourteen ounces. That, on the hottest summer day, the internal pressure in a full bottle of Coca-Cola is never over ninety pounds per square inch, whereas, the bursting pressure of a Coca-Cola bottle is between five hundred ninety-five to one thousand and fifty pounds per square inch." Defendant insists that the doctrine of res ipsa loquitur has no application herein and that the Supreme Court of this State, in the recent case of Le Blanc v. Louisiana Coca-Cola Bottling Co., Ltd., 1952, 221 La. 919, 60 So.2d 873, 875, expressly distinguished "bottle explosion cases" from those in which "a foreign ingredient" is involved as is reflected by the following language extracted therefrom:
"The plaintiffs in the explosion cases depend entirely upon the law of negligence for recovery; the plaintiff in this case is entitled to rely on defendant's implied warranty that its product is safe for human consumption."
The defendant, in view of the foregoing language, reasons that the Supreme Court has removed the instant case from the scope of the Le Blanc decision and we must now turn to the law of negligence in seeking a solution of this case; therefore, since there was no affirmative proof of negligence on the part of the defendant and the plaintiff did not eliminate the possibility of some other cause for the explosion, the doctrine of res ipsa loquitur has no application, so as to impose liability upon the defendant. In order to factually substantiate this syllogism the defendant points out that the beverage left defendant's plant in New Orleans on a hot June day and was delivered by its truck to Badalamenti in Oakville, Louisiana; the coca-cola remained in Badalamenti's possession and under his control until June 10th, 1951, at which time he placed one of the cases on his truck and delivered it to the kitchen of Mabel Williams' home; the case was then handled by the plaintiff, who removed it from the kitchen to the rear yard and the individual bottles from the case to the "wooden keg", at which time it was iced. Defendant insists that in view of these multiple handlings plaintiff has failed to show that the bottle had not been "tampered with" subsequent to the time it left the control of the defendant.
In conjunction with this aspect of the case defendant tendered the expert testimony of Dr. Oscar G. Fryer, Professor of Physics at Drury College, Springfield, Missouri, who has been teaching that subject for fourteen years. We shall quote liberally from this testimony in view of the fact that defendant placed more than the usual emphasis thereon. Dr. Fryer was graduated from Drury College with both an A.B. and B.S. degree. He obtained his Master of Science degree in Physics from the University of Colorado and his Doctorate of Philosophy in Physics from Indiana University. There is no doubt in our minds that Dr. Fryer possesses an excellent formal education in the science of Physics. Dr. Fryer testified that he has engaged in research work in the field of gases as they relate to the soft drink industry for many years, and during *461 the course of this research he made a study of beverage bottles, particularly those containing coca-cola, as they may be affected by gases and other elements. He stated that he had made a complete study of the coca-cola bottling plant in the City of New Orleans in all of its phases which are pertinent to this case; he tested the breaking point of bottles at random in the coca-cola plant and engaged in innumerable experiments previously; the average pressure attained when the bottles at the plant exploded was 805 pounds per square inch and the average pressure at which the various bottles were broken in numerous tests elsewhere was approximately 750 pounds per square inch; it requires 200 pounds per square inch of pressure to blow a cap off of a bottle of coca-cola and approximately 750 pounds per square inch, as related hereinabove, to explode a bottle. The judge of the court, a qua, permitted Dr. Fryer to demonstrate the explosion point of coca-cola bottles which were purchased at random by the court attaches. The first bottle exploded under a pressure of 990 pounds. At this point in the demonstration counsel for the defendant directed the court's attention to the great number of fragments remaining after the bottle was exploded and compared it with the bottle introduced in evidence in the present case, which reflected that the neck thereof was sheered off by a diagonal cut leaving, in the main, two pieces of broken bottle. The second bottle tested exploded under a pressure of 1120 pounds per square inch. The final demonstration revealed that 185 pounds per square inch blew the cap off of a coca-cola bottle. Dr. Fryer continued by stating that if a bottle of coca-cola is put in a tub of ice at 11:00 in the morning and is allowed to remain therein until 2:00 p. m. that the temperature would be reduced to something like 32 to 34 degrees and that the effect of the decrease in temperature would reduce the inside pressure of the bottle to around 25 to 30 pounds per square inch.
A fair summary of Dr. Fryer's testimony reveals that a bottle, whether it be perfect or defective, still breaks as a result of internal pressure when the said internal pressure is at its highest and not its lowest point as was the bottle in this case which had been submerged in ice and water for approximately three hours and that, an excessive inside pressure could not be induced in a bottle of coca-cola by the method of carbonation used by the defendant, for the reason that the bottles are exposed to atmospheric pressure in an open room for four seconds prior to the time that they are capped, which permits any excess of CO2 gas to escape therefrom.
We have diligently analysed the testimony of plaintiff's and defendant's witnesses and the following facts are, in our opinion, proven with legal certainty. Plaintiff was requested to serve one of the guests a coca-cola; he leaned over the keg of iced coca-cola contemplating removing a bottle of the beverage therefrom, but before he touched anything contained in the "keg", one of the bottles exploded and the neck therefrom struck him in the eye resulting in the loss thereof; that the bottle of coca-cola was purchased from Badalamenti who, in turn, had purchased it from the defendant three days prior to the explosion; the bottle was manufactured in 1943 and could have been used several hundred times in the trade; that it was not frozen, knocked against other bottles nor was it tampered with by Badalamenti, the plaintiff or anyone else from the time it was delivered to Badalamenti until the moment of the explosion.
In Ortego v. Nehi Bottling Works, 1942, 199 La. 599, 6 So.2d 677, Chief Justice Fournet, as the organ of the court, thoroughly analyzed much of the jurisprudence and the facts upon which the decisions of the courts were predicated, relating to the application of the doctrine of res ipsa loquitur to bottle explosion cases and we are of the opinion that we are thereby afforded a comprehensive guide to the solution of this case.
In fact, this case could practically be paraphrased from the language used in the Ortego case, Boucher v. Louisiana Coca-Cola Bottling Co., Ltd., La.App.1950, 46 So.2d 701 and in Lanza v. De Ridder Coca Cola Bottling Company, La.App.1941, 3 So.2d 217.
*462 The Supreme Court in the Ortego case cited with approval the case of Payne v. Rome Coca-Cola Bottling Co., 1912, 10 Ga. App. 762, 73 S.E. 1087 and stated [199 La. 599, 6 So.2d 678.]
"Although the case of Payne v. Rome Coca-Cola Bottling Company, supra, was decided in 1912, some thirty years ago (now 41 years ago), it remains today one of the leading cases on this subject."
In the Payne case the Georgia Court reasoned that "Since for every effect there is a cause, where negligence exists, some one must have been the responsible author. If he can be found, it is right that he should pay the penalty. The bottle exploded. Inferentially some one was negligent. It was not Cook, the last vender of the bottle, nor the plaintiff's brother, nor the plaintiff, nor yet Barnett, because they all stand exonerated by direct or circumstantial evidence of their freedom from fault. But the inference of negligence remains, and some one is prima facie to blame. By a process of elimination we get back to the manufacturer, who set the dangerous agency in motion and upon whom the blame ought inferentially to be fastened. It is certainly no hardship to require at the manufacturer's hands an explanation of the occurrence, that the jury may say whether it, like the other persons who handled the bottle, has been exonerated. * * * It charged the bottle with carbonic acid gas, it put together the constituent elements of the beverage, it manufactured or procured the bottle to hold these elements, and it put the bottle in circulation, with an invitation to the public to use the contents as a harmless and refreshing beverage." [10 Ga.App. 762, 73 S.E. 1088.]
In Stolle v. Anheuser-Busch, Inc., 307 Mo. 520, 271 S.W. 497, 500, 39 A.L.R. 1001, the Supreme Court of Missouri made a thorough analysis wherein the doctrine of res ipsa loquitur was invoked in cases involving the explosion of bottles containing carbonated beverages manufactured for sale, but the Court, in the final analysis, rested its conclusion on the rational of the Payne case, as the following language of the opinion indicates:
"These bottled beverages, containing explosive gases, are put upon the market with the intention that they will be transported throughout the country and sold to consumers for the profit of the manufacturer. Obviously this should be at his risk. Public policy requires that the manufacturer should assume the risks and hazards of explosion incident to the reasonable and ordinarily careful transportation and handling of these goods in the usual course of business."
Counsel for defendant has argued both orally and in brief that the alleged explosion occurred after the bottle had passed into the hands of third parties and was beyond the control of the defendant; and further, that defendant has overcome the prima facie case made out against it by evidence which established the following facts: their plant is equipped with the most modern, scientific appliances and machinery, which were installed in 1949; the method of carbonation used by the defendant in exposing the bottles to atmospheric pressure in an open room for four seconds prior to the time that they are capped; in bottling their product they use bottles manufactured by the Chattanooga Glass Company and the Owens Illinois Glass Company, which are constructed to meet the specifications of the Coca-Cola Company and which are the leading manufacturers of beverage bottles in the industry; and that these bottles withstand an average pressure of 750 pounds per square inch, while a pressure of only 60 to 75 pounds per square inch exists within the bottles at ninety degrees temperature: therefore, to reiterate, defendant has overcome the prima facie case made out against it by plaintiff. In fact, the testimony of Sheldon J. Wright, Assistant Superintendent of defendant's plant and its expert, Dr. Fryer, so completely vitiates the possibility of a bottle of coca-cola exploding, that if it were not for the fact that the bottle in this case did explode, without being handled by anyone, there would exist no logical avenue remaining open to this court, but to conclude that the bottle did not, in fact, explode. However, despite all of the testimony *463 of Wright and Dr. Fryer, the fact remains that the bottle did explode and destroy one of plaintiff's eyes.
No citation of authority is necessary to sustain the proposition that the sole purpose of the doctrine of res ipsa loquitur is to inferentially establish negligence on the part of defendant and for it to be applicable, the instrumentality which causes the injury must be under the exclusive control of the defendant, however, the doctrine has been extended, and reasonably so, to that class of cases where the instrumentality causing the damage is in the actual possession of the plaintiff, but is considered to be in the constructive control of the defendant, because sufficient proof has been adduced revealing that it is in the same condition as when it left the defendant's possession. Obviously, the prevailing jurisprudence of this State has placed bottle explosion cases in this category.
The trial judge was of the opinion that the doctrine of res ipsa loquitur was applicable to the instant case and we find no error in his conclusion.
We, in the final analysis, share the view expressed by the Supreme Court in the Ortego case:
"It is impossible for the court to say with any degree of certainty exactly what caused the explosion of the bottle in this case. After reviewing all of the evidence before us, the only reasonable conclusion that we can arrive at is that the proximate cause of the explosion which resulted in injury to the relators was some fault on the part of the agents or employees of the respondents in the preparation or handling of the bottled product."
We find it unnecessary to endeavor to include within the ratio decidendi of this opinion, defendant's contention that the legal and factual aspect of this case is not encompassed by the doctrine of "implied warranty" enunciated in LeBlanc v. Louisiana Coca-Cola Bottling Co., supra, (beverage contained a decomposed housefly) for the reason that the prevailing jurisprudence cited hereinabove easily acts as a guide to the conclusion which we have
reached. However, assuming arguendo, that the doctrine of res ipsa loquitur is inapplicable to this case, or that the Supreme Court should, in its wisdom, decide to remove this type of case from its category of "res ipsa loquitur", we see no reason why the doctrine of "implied warranty" enunciated for the first time in the LeBlanc case should not apply to "a safe bottle for the beverage" as well as to the "wholesomeness of the beverage" contained therein.
The Charity Hospital record reveals that plaintiff was twenty-seven years of age and had apparently enjoyed physical good health prior to the accident; his left eye was removed by surgery on June 10th, 1951, and that he was discharged from the hospital on or about June 19th, 1951. Plaintiff testified that the removal of his eye has resulted in pain and suffering and caused the "right eye to water" on many occasions.
The record leaves some doubt in our minds as to whether plaintiff will be in a position to resume the employment which he possessed on the date of the injury, that is "a cook" on a ship owned by the Lykes Bros. Steamship Company, where he earned a salary of $230 per month plus overtime, room and meals while aboard the ship. He is presently employed by the Electrical Supply Company, Inc., earning a salary of $35 per week. The American Experience Table of Mortality reflects that plaintiff, at the time of the loss of his left eye, had a life expectancy of 40.36 years.
We have carefully examined the record and the jurisprudence, and we find that they fail to sustain an award of $15,000; therefore, we are of the opinion that the judgment should be amended so as to reduce the award from $15,000 to the sum of $12,500. In reaching this result we have considered all of the existing circumstances and the present devaluation of the dollar, and we are of the opinion that this award is proper, but only insofar as money may make it so.
It is, therefore, ordered, adjudged and decreed that the judgment appealed from be amended by reducing the amount thereof from $15,000 to $12,500 and, as thus amended, *464 it is affirmed. Plaintiff-appellee to pay cost of appeal, all other costs to be paid by defendant-appellant.
Amended and affirmed.
JANVIER, Judge (concurring).
I have very grave doubt on the question of whether the bottle exploded without the application of some external force. However, I believe that the record does not justify the conclusion that the result reached is obviously incorrect.
I concur in the decree.