FRUGE, Judge.
This is an action to recover damages for injuries sustained in an automobile accident. The plaintiffs are Rufus Tyler, Clara Mae Tyler and Ellis (sometimes spelled “Elious”) Tyler. The defendants are Albin J. Segura and his public liability insurer, United States Casualty Company.
The District Court rendered judgment against the defendants and in favor of the plaintiffs in the following amounts:
Rufus Tyler $ 200.00
Clara Mae Tyler 250.00
Ellis Tyler, loss of eye 6,000.00
special damages 87.00
The plaintiffs have appealed to this Court asking an increase in quantum. The *805 defendants have also entered a suspensive appeal.
A thorough study of the record reveals only one serious issue, namely, what is the value of the loss of his left eye to Ellis Tyler, insofar as an award of money can compensate for same?
Ellis Tyler is 30 years old, a semi-skilled workman earning about $250 per month before the injury.
On September 8, 1957, the three plaintiffs, Rufus Tyler, Clara Mae Tyler and Ellis Tyler were guest passengers in a 1956 Ford automobile which was proceeding East on U. S. Highway 90 approaching the city limits of New Iberia, Louisiana. The vehicle was being driven by one Vernon Bell Smith. Ellis Tyler and Clara Mae Tyler were husband and wife and Ellis was the son of Rufus Tyler. All of the plaintiffs as well as Smith, the driver, were colored and as of the date of the accident, they were residents of Beaumont, Texas. The purpose of the trip was to visit some of the Tylers’ relatives who lived in New Iberia.
According to the testimony of Smith, the driver, the Ford automobile was traveling at approximately 55 miles per hour or some five miles below the lawful highway speed limit.
Suddenly, a Lincoln automobile driven and owned by the defendant, Albin Segura, pulled out from the Segura driveway and turned in the direction of New Iberia. Smith testified that when the Lincoln pulled out in front of him, he was approximately 60 feet from it. Smith did his best to dodge the Lincoln and apply his brakes, but he was unable to avoid the collision.
According to the testimony of the defendant, Albin Segura, he had stopped in his driveway before entering the highway, and upon looking towards the west, he saw two vehicles coming from the direction of Lafayette and proceeding east. While the two vehicles he saw were some distance apart, the second vehicle, (which he later learned was a Ford driven by Smith) was proceeding at a more rapid rate of speed and was closing the distance between it and the first vehicle. Segura testified that he waited until the first vehicle had passed and then pulled out as quickly as possible, without looking at the second vehicle after the first had passed.
The Ford struck the rear of the Lincoln and the impact of the collision inflicted certain personal injuries on the plaintiffs, these being as follows:
(1) Ellis Tyler — bruises about the head and chest, laceration of the left eye lid and blow to the left eye, resulting in a detachment of the retina and loss of sight in the left eye.
(2) Clara Mae Tyler — bruises of the body and a laceration of the right leg.
(3) Rufus Tyler — laceration of the scalp, small laceration on the bridge of the nose, small laceration on the lid of one eye, general bruises and contusions, and stiffness of the neck.
After trial on the merits, the lower Court found that Albin Segura was guilty of negligence and that his negligence was the proximate cause of the accident. Damages were awarded to the plaintiffs as set forth above.
The trial court in its written reasons for judgment said:
“The defendants in their answer deny any negligence on the part of defendant, Albin Segura, who was the driver of one of the automobiles in the alleged collision and, in the alternative, set up two separate defenses, firstly, contributory negligence on the part of the plaintiffs and, secondly, that plaintiffs were on a joint venture with the driver- of the automobile in which they were riding when the alleged accident occurred and, consequently, any negligence on the part of the driver of the *806 automobile in which they were riding is imputable to them.
“It is my considered opinion that by a preponderance of the evidence Albin Segura was guilty of negligence, and that his negligence was the proximate cause of the accident. His own testimony establishes negligence on his part. On the other hand, defendants have failed to prove by a preponderance of the evidence that Vernon Bell Smith, the driver of the automobile in which plaintiffs were riding at the time of the accident, was negligent. It would appear from the evidence that he was suddenly confronted with an emergency created by Albin Segura and that he did about all that he could do to avoid the accident.
“In view of my conclusions above expressed, it becomes unnecessary for me to consider the law and jurisprudence on the effect of contributory negligence and joint venture.
“The testimony offered at the trial of this case has not been transcribed and it would therefore serve no useful purpose for me to attempt a detailed analysis thereof. However, I will say, briefly, that Albin Segura testified that some very short time before the accident he came to a stop in his driveway which is contiguous to Highway 90. He then looked to see if there were any automobiles on the highway. He saw two automobiles traveling in an easterly direction, one approximately six hundred (600) feet away from him and the other approximately eighteen hundred (1800) feet away, and that the latter seemingly was traveling faster than the one ahead of it and consequently, shortening its distance from the first automobile. Mr. Segura allowed the first automobile to pass and then proceeded on to the highway from a stopped position to enter the lane of traffic of the oncoming car in which plaintiffs were riding without again looking to see how close it was then from the point at which he entered the highway.
“I find nothing in the evidence which proves that Vernon Bell Smith was driving at a speed in excess of the speed limit which is at the point where the two cars collided, sixty (60) miles per hour. Vernon Bell Smith testified that he was traveling approximately fifty-five (55) miles per hour. Some evidence was offered to show that possibly Vernon Bell Smith was fatigued and, possibly, he had indulged in alcoholic drinks and that accordingly, he was not in the best condition to undertake to drive the automobile he was driving. However, the facts of the accident do not bear this out. It would appear that once he was confronted with the emergency he did about all that he or anyone else could have done under the circumstances.
“I will now consider the question of damages.
“The injuries sustained by Rufus Tyler were, according to the preponderance of the evidence, minor. His testimony to the effect that he had to miss two weeks of work as the result thereof was not sustained. He was treated by a doctor, employed by the company for whom he was working at the time of the accident, yet no testimony from this doctor was offered in evidence to corroborate this testimony. Under these circumstances, he has failed to sustain the burden of proof required of him in that respect. His special damages according to the evidence, amounted to approximately fifty and no/100 ($50.00) dollars. I will award him one hundred fifty and no/100 ($150.00) dollars for pain and suffering or a total of two hundred and no/100 ($200.00) dollars.
“The injuries sustained by Clara Mae Tyler, wife of Ellis Tyler, were also relatively minor. She received a cut *807 on the leg which required sutures. The charge made by Dr. Cullotta for this treatment was ten and no/100 ($10.00) dollars. Accordingly, I will award to her husband the sum of ten and no/100 ($10.00) dollars for the reimbursement of this payment. She testified that she missed approximately four (4) months of work as a result of the accident and that she had been earning wages of twenty-five and no/100 ($25.00) dollars per week. Her testimony in this respect was not supported by any other evidence, although she was under the care of a doctor in Beaumont, Texas, and was expecting a child. It is reasonable to assume that, if this doctor’s testimony would have corroborated her testimony, it would have been obtained through deposition or otherwise. I believe, however, that it is fair to assume that she would have been justified in missing work for the period of two (2) weeks to allow her leg to heal. In this respect, I will award her husband the sum of fifty and no/100 ($50.00) dollars. Aside from her own testimony, there is little or no evidence to prove that she suffered much pain from her injuries or that she suffered any great anxiety over the possibility of injury to her unborn child. Therefore, in this regard, I believe an award of two hundred fifty and no/100 ($250.00) dollars would be adequate.
“Concerning the claim of Ellis Tyler for the loss of sight in his left eye, for pain and suffering, medical expenses in connection therewith, loss of wages and earning capacity, it would appear that had Tyler undergone an operation to restore the vision in his left eye, his damages might have been minimized. However, this being only a possibility and it being very doubtful that Ellis Tyler knew of or realized the importance of obtaining further treatment from Dr. Jerry Johnson and of possibly undergoing an operation, the fact that he did not seek additional treatment for his eye should not greatly affect his claim for the injury actually sustained by him which resulted in the loss of sight in his left eye.
“At the time of the accident giving rise to this suit, Ellis Tyler was earning approximately sixty and no/100 ($60.00) dollars, per week, or two hundred fifty and no/100 ($250.00) dollars per month, and he will therefore be allowed that much for the wages he would have earned during the months following the accident.
“After returning to work with his former employer, Dollenger Steel Company, he was paid wages equal to those which he was earning before the accident. After working for five (5) months, he and three (3) other employees were laid off. The other three employees have been re-hired while he has been earning a living by keeping up yards — cutting grass, etc.
“Ellis Tyler did not prove that he was not re-hired by Dollenger Steel Company because he had lost his left eye, but this is a possibility. He testified that he had applied for work with two or three industrial plants, but that he had been unsuccessful. At the time of the accident, Tyler had a job with a steel company which required him to operate compressed air machines. It is reasonable to assume that he will not be able to secure employment in occupations so hazardous that he could injure himself as well as others on account of the loss of sight in his left eye and this will, no doubt, reduce his opportunities for employment. Nevertheless, he will no doubt be able to secure employment in non-hazardous occupations by which he will be able to earn almost as much, if not as much, as if he still had the sight he formerly had in his left eye. In his former occupation, in addition to operating compressed air machines, he loaded and unloaded trucks and per *808 formed other services which apparently were not hazardous.
“Ellis Tyler is entitled to recover the amount of twenty-seven and no/100 ($27.00) Dollars paid by him to Dr. Jerry Johnson for the treatment he received from him, the amount of sixty and no/100 ($60.00) dollars with respect to his wife as hereinabove noted, and the sum of six thousand and no/100 ($6,000.00) dollars for all other elements of damages sustained by him. This award I believe to be consistent with those approved by our Appellate Courts in somewhat similar cases, taking into consideration that over a period of years the value of the American dollars has consistently depreciated in value. See Crow v. State Farm Mutual Automobile Insurance Co., 10 So.2d 105 (Court of Appeal First Circuit 1942); Ford v. Leonard Truck Lines, Inc., 26 So.2d 309 (Court of Appeal, Second Circuit, year 1946). * * * ”
The finding of facts by the trial judge meets with our approval and accordingly we conclude that he was not manifestly erroneous. Consequently and moreover we concur in his judgment in every respect, save and except the amount awarded Ellis Tyler for the loss of sight in his left eye.
We are impressed with the fact that this plaintiff returned to the same work at the same wage scale, after the accident, which he held for some five months, plus the fact that the trial judge found that he will no doubt be able to secure employment in nonhazardous occupations by which he will be able to earn almost as much, if not as much, as if he still had the sight he formerly had in his left eye. The trial judge observed that in his former occupation, in addition to operating compressed air machines, he loaded and unloaded trucks and performed other services which apparently were not hazardous. It is also in evidence that his right eye was not affected and that he had 20/20 vision therein.
In the case of Johnson v. Pickering Land & Timber Co., 1913, 132 La. 425, 61 So. 514 our Supreme Court approved an award of $6,000.00 to plaintiff Johnson. The facts were that a minor, who was working for the defendant as the operator of a planer machine, lost the sight of one eye when a belt broke.
The lower Court in the case at bar relied upon the cases of Crow v. State Farm, La.App., 10 So.2d 105, and Ford v. Leonard Truck Lines, La.App., 26 So.2d 309, to assess the damages to Ellis Tyler. In the Crow case, the Court of Appeals gave the unemployed plaintiff $3,500 for the loss of sight in one eye during 1942.
In the Ford case, the plaintiff sustained the loss of sight in his right eye, loss of hearing in the right ear, damage to his nerves, fractured ribs and several other injuries. The trial court gave him judgment for only $7,228.50.
Several more recent cases, principally decided in 1953 and 1954 have established a considerable higher range of verdicts in eye cases. In the case of Johnson v. Louisiana Coca-Cola Bottling Co., La.App., 63 So.2d 459, the plaintiff lost his left eye as a result of a bottle explosion. In the lower Court he was awarded $15,000 and the defendant appealed. After finding liability to be present, the Orleans Court of Appeal turned to the question of quantum. The Court noted that the plaintiff was 27 years of age and had enjoyed good health prior to the accident. The Court stated that the record left some doubt as to whether the plaintiff would be in a position to resume his employment as a cook on a ship, earning $230 per month plus overtime, room and meals while aboard. This was the employment he held prior to the accident. The award of $15,000 was reduced to $12,500. However, in this case, the whole eye had to be removed and as a result of which it caused the other eye or the right eye to water. Ellis Tyler certainly did not prove herein his vision in the right eye was affected at all. In fact, both of the experts *809 testified he had a 20/20 vision in the right eye, and the only difference the loss of the left eye had on Ellis Tyler was in his depth perception.
In Prine v. Continental Southern Lines, La.App., 71 So.2d 716, 717, involving the loss of an eye plus other injuries, a jury award of $18,000 was affirmed by the Second Circuit Court of Appeal in 1954. The Prine case, however, is an entirely different factual situation. In fact, this case (Prine) revealed the plaintiff had suffered a broken jaw, both upper and lower bones, severe pain in the left side of his face, left shoulder and knee, with bruises and lacerations over his face and body, and particularly a two and one-half to three inches long laceration on the left mandible, and one about an inch and a half in length over the left eyebrow besides a detached retina. The Court, in this Prine case awarded $18,000. The case fails to reveal how long the plaintiff stayed in the hospital but with the injuries, we presumed he had a lengthy stay. The only evidence in the case at bar is that Ellis Tyler remained in the hospital less than one (1) day. The only evidence here is he had a laceration over the left eyelid, which does not show when his eyes are opened, and a detached retina. (Emphasis supplied.)
In McDowell v. National Surety Corporation, La.App., 68 So.2d 189, Writs of Certi-orari Denied, the plaintiff was knocked unconscious in an automobile collision, sustained a brain concussion and a serious injury to one eye, necessitating the removal thereof. The lost eye was replaced by a glass eye. At the time of the accident, the plaintiff, McDowell, was 28 years of age and employed as Fire Department Captain earning $275.50 per month. Following the accident he was reduced to the job of beginner fire alarm operator at a salary of $213 per month. The Court awarded permanent disability for loss of eye $15,000.
We accordingly conclude that an award of $12,000 for disability to Ellis Tyler as a result of the loss of his left eye is adequate and not excessive.
For the foregoing reasons, the judgment of the trial court is amended so as to award the plaintiff Ellis Tyler $12,000 in lieu of $6,000 therein awarded for the loss of an eye, and in all other respects the judgment is affirmed at defendants’ costs.
Amended and affirmed.
On Application for Rehearing.
Rehearing denied, en Banc.