LEMMON, Judge.
In this appeal by defendants from a judgment awarding plaintiff damages for personal injuries incurred in a rear end collision, the sole issue is whether the trial judge in the assessment of damages abused the much discretion accorded him by C.C. art. 1934(3). We hold that he did and set aside the award.[1]
In the December 2, 1972 accident plaintiff, a 27-year old policeman, sustained a mild cerebral concussion and a cervical, thoracic and lumbosacral sprain, as diagnosed by Dr. Dominick Condie, a general surgeon and the staff doctor for the police department. The doctor prescribed muscle relaxants, sedation and physiotherapy. By late January plaintiff’s principal complaints involved only his neck. On February 2, 1973 plaintiff had shown marked improvement and was allowed to return to work, since he complained of pain only after activity which placed a strain on his neck.
On May 23, 1973 plaintiff returned, complaining of muscle fatigue. Dr. Condie found slight tenderness and motion loss in the neck area and crepitation upon certain neck movements.[2] Between the May, 1973 visit and the first day of trial (September, 1974) plaintiff did not seek further medical attention about the neck condition, although he did consult Dr. Condie twice about unrelated problems.
On the first day of trial Dr. Condie had additional X-rays taken, and he testified as *651 to the radiologist’s report of “beginning narrowing of the posterior aspect of the fourth interspace with early hypertrophic spurring posteriorly.” At this point defendants moved for and were granted a continuance in order to allow adequate time for preparation of rebuttal to this new evidence.
At the second day of trial three weeks later each side presented radiologists, who disagreed as to whether the 1974 X-rays demonstrated minimal spurring or excess bone formation, with minimal encroachment on the foramina. They agreed, however, that the very minimal narrowing shown in the 1974 X-rays was present to the same degree in the 1972 X-rays and the condition therefore pre-existed the 1972 injury.
Dr. Eugene Dabazies, an orthopedic surgeon who examined plaintiff and both sets of X-rays, agreed that the narrowing, if any existed, predated both X-rays and had not changed during the two years between films. As to spurring, he considered the X-rays to be within normal limits, but for purposes of argument stated that if spurring could be reasonably interpreted from the X-rays, it was so small as to be insignificant from an orthopedic standpoint. He observed that any spurring could be the result of trauma, or of natural progression of the degenerative process, already influenced by the narrowing in the same area, or of a speedup of the progression secondary to trauma.
Dr. Dabazies further testified that his examination revealed only tenderness upon palpation of the trapezius muscle and crep-itation, which he attributed to a snapping of the small facet joints and which he categorized as a non-pathological finding, not found in the average individual, but of no significance. He opined that plaintiff was over the acute effects of his injury and that his complaints should diminish with time.
On the other hand, Dr. Condie opined that the crepitation indicated abnormal changes in the neck, probably post-traumatic arthritis, which diagnosis was confirmed by the narrowing and spurring shown in the 1974 X-rays.[3] He estimated a 10 to 20% disability of the neck which was likely to worsen with age.
One of the radiologists admitted, furthermore, that spurring may or may not cause pain and that the clinician who performed a complete examination was in a better position to determine whether the spurring was causing problems than a radiologist who simply interprets X-rays.
The trial judge .found that plaintiff was still suffering at time of trial and that the evidence of-spurring justified his continued complaints. In awarding $40,000.00, plus undisputed loss of wages for the two months following the accident, the judge conceded error if the reviewing court concluded the evidence supported only a finding of a two-month whiplash.
The evidence, while indicating a more severe injury than a cervical sprain of short duration, does not support an award of $40,000.00. Plaintiff had incurred a cervical injury in 1968 (at which time the X-rays revealed no narrowing) and had admitted then that he had suffered earlier difficulty with similar symptoms. The slight narrowing developed thereafter, but prior to the 1972 accident, and had not changed two years later. Furthermore, the only orthopedic specialist who testified attributed no significance to any narrowing or spurring shown on the X-rays, in the absence of any other clinical signs of nerve root involvement. And the radiologists admitted that the X-rays (which they simply interpret) are only one of the diagnostic tools used by clinicians in determining the overall picture.
The evidence presented in this case supports a conclusion that plaintiff sustained a *652 cervical sprain which substantially resolved in two months, but which did cause persistent, non-acute symptoms secondary to the aggravation of a pre-existing degenerative condition. The likelihood of worsening was not established by preponderating proof. On this evidence we fix the award of general damages at $10,000.00.
Accordingly, the judgment of the trial court is amended to decrease the amount of the judgment to $12,030.96. As amended, the judgment is affirmed.

Amended and affirmed.

. The three judges who originally heard the case agreed that the judgment should be set aside, but were unable to agree on the amount of damages to be assessed. The case was therefore reargued to a five-judge panel in accordance with La.Const.1974, Art. 5, § 8 (B).

. The crepitation had been demonstrated by plaintiff in 1968 as a means of obtaining relief when Dr. Condie had treated him for a neck injury in a rear end collision, an injury significant enough for the doctor to recommend orthopedic consultation after initial treatment failed to achieve desired progress. Furthermore, plaintiff told Dr. Condie in 1968 that the symptoms were similar to a difficulty he had previously experienced.

. This opinion was stated at the first day of trial before he was made aware that the narrowing and crepitation predated the injury.