288 So.2d 44 (1973)
Dimple Hardee WALKER, Individually and as natural tutrix of the minor Terry Wayne Davis
v.
Von Elton CHAMPION et al.
No. 53491.
Supreme Court of Louisiana.
December 3, 1973.
Rehearings Denied January 11, 1974.
*45 Gerard F. Thomas, Jr., Natchitoches, for plaintiff-applicant.
Donald G. Kelly, Gahagan & Kelly, Natchitoches, for defendants-respondents.
Brittain & Williams, Natchitoches, for Louisiana Farm Bureau Mutual Ins. Co., for defendant-respondent.
DIXON, Justice.
This is a suit by a mother and her son (emancipated since the injury) for medical expenses and for damages resulting from Terry Davis' loss of an eye. On the application of the plaintiffs, we granted writs[1] to review the judgment of the Court of Appeal, 274 So.2d 840 (La.App. 3rd Circuit 1973), which had reduced the quantum and exonerated one of the defendants. Terry Davis' injury occurred when he was hit by a bottle thrown by defendant Champion during an episode of horseplay on the afternoon of March 2, 1972.
The case was tried before the district judge alone. He rendered judgment in favor of Mrs. Walker for medical expenses and in favor of Terry Davis for $100,000. The district judge cast the defendants, Barry DeBlieux and Von Champion and Champion's liability insurer, Louisiana Farm Bureau Mutual Insurance Company; the liability of Farm Bureau was limited to the policy limits of $50,000, plus $500.00 in medical expenses, or a total of $50,500.
The Court of Appeal reversed as to Barry DeBlieux and reduced Terry Davis' award to $35,000. We granted plaintiffs' application for writs. We reverse the judgment of the Court of Appeal, and reinstate the judgment of the district court.
The Court of Appeal exonerated DeBlieux from liability because the bottle which struck Davis was thrown by Champion; the Court of Appeal considered that because DeBlieux was not "guilty of negligence" the district judge erred in finding him liable.
A recitation of the facts demonstrates the liability of both DeBlieux and Champion. Liability is predicated upon fault, not negligence (C.C. 2315). Four young men, engaged in one way or another in the cattle business, had worked the first part of the day, and proceeded to a point near the Clarence town dump on the banks of Red River to shoot their .22 rifles at some bottles and cans. They traveled in the truck operated by DeBlieux. Champion, in his middle thirties, employed the younger men in part-time work. Terry Davis was eighteen years old at that time.
While the other men were having target practice, Terry Davis was driving DeBlieux' truck around the pasture. When the others wanted more ammunition, which was in the truck, they yelled at Davis. He did not respond immediately. When he did drive up in the truck, DeBlieux dragged him out by the hair of his head. There was some pushing and shoving and DeBlieux pushed Davis down the high bank of the river, picked up a beer bottle and threw it at Davis. He threw several bottles, Champion joining in the sport. Neither *46 Champion nor DeBlieux, of course, intended to hit Davis.
Davis took refuge behind the body of a wrecked automobile. His companions peppered the area with beer bottles. Davis decided to change his position, and ran toward a large tank abandoned at the water's edge. Champion fired a couple of shots behind him as he ran. When Davis reached the tank, Champion and DeBlieux threw more beer bottles, some of them breaking on the tank. When Davis no longer heard bottles landing around him, he stuck his head up, unfortunately in time to catch a quart beer bottle full in the face. The bottle, thrown by Champion, shattered, causing numerous lacerations, a hairline fracture above the eye and the destruction of the left eye.
It is clear that the injuries to Davis were caused by the mutual fault of Champion and DeBlieux. The fact that only the bottle thrown by Champion struck Davis does not exonerate DeBlieux. DeBlieux started the fracas. It should have been apparent to DeBlieux and Champion alike that what they were doing was dangerous, and likely to cause serious injuries to Davis. Article 2324 of the Civil Code governs. It provides:
"He who causes another person to do an unlawful act, or assists or encourages in the commission of it, is answerable, in solido, with that person, for the damage caused by such act."
Nor do we agree with the Court of Appeal in its reduction of the award to the plaintiff from $100,000 to $35,000. The reduction is not supported by the record. There is no evidence in the record from which we can determine that the trial judge abused his discretion:
". . . In the assessment of damages. . . as well as in cases of offenses, quasi offenses, and quasi contracts, much discretion must be left to the judge or jury . . ." C.C.1934.
See, Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127 (1967); Ballard v. National Indemnity Co. of Omaha, Nebraska, 246 La. 963, 169 So.2d 64 (1964) and Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963).
Plaintiff dropped out of school when he finished the ninth grade. His mother testified that he had a difficult time in school. His only employment, at the time he was injured, had been in connection with the cattle business. It was agricultural work, unskilled. Subsequent to the injury and prior to the trial, plaintiff went to work for a company engaged in placing riprap to stabilize the banks of Red River. This work also was manual labor of an unskilled nature.
The defendants point to Terry Davis' marriage subsequent to the injury, and to the fact that his employment at the time of the trial paid him more than his work for Champion.
These two factors are not decisive. The only medical evidence in the record is that produced by the plaintiffs. It stands uncontradicted. That evidence is that Terry Davis' employability is now limited because of the loss of his eye. It is even more limited because he is suited only for unskilled labor. This increases the risk of loss of his other eye, one physician testified, five or six times. He now has a "blind side;" his peripheral vision and his depth perception are seriously reduced. He must wear protective glasses if he is to protect his good eye.
His artificial eye, already chipped at the time of trial, has a life from two to five years and then must be replaced.
Davis was hospitalized for about a week after the operation which removed his eye. The cosmetic results of the operation were not as good as they might have been because of some difficulty during the operation when Davis' blood pressure dropped during the administration of the anesthesia; the physician did not have as *47 much time as he wished for the performance of the repair work.
Davis was confined at home for about three weeks, during which time it was necessary to apply medication to his wounds about three times a day. He suffered from depression from the moment of the injury, and there was evidence that, even at the time of the trial, there was embarrassment from the disfigurement resulting from the injury. The physicians testified that the left eye socket had taken on a sunken appearance which would increase as the years passed.
Three months after the accident plaintiff had to travel to Houston for the making and fitting of the artificial eye. He must do the same again with the passage of time, because the artificial eye, made of plastic, suffers pitting and scratching, which is conducive to infection.
Terry Davis' own testimony demonstrated the hazards which will continue to beset him because of the loss of one eye. While mowing the lawn near the side of a house, the right side of his head collided with an air conditioning unit extending from a window. He was struck in his artificial eye while at work by a fragment of rock. He was almost knocked down by a dragline bucket which was swung in his direction from his blind side. He testified about a near collision at an intersection because he failed to see an automobile approaching from his blind side.
The inconvenience of an artificial eye is no small matter. It must be removed each morning and washed to remove the body fluids that accumulate on it. Plaintiff testified that he removed it at work and washed it two or three times a day because of the sand and dust, which cause irritation.
There is no other evidence in the record to contradict the evidence adduced by the plaintiffs. We cannot say that the trial judge abused his "much discretion" when he found that "for the loss of Mr. Davis' eye, loss of earning power, increased hazard of total blindness by reason of now having only one eye, physical pain and suffering, mental pain and anguish, permanent disfigurement, future medical and prosthesis expenses, permanent disability, the plaintiff Davis is awarded . . . the sum of $100,000.00."
The judgment of the Court of Appeal is reversed, and the judgment of the district court is reinstated, at defendants' costs.
SANDERS, C. J., dissents in part with written reasons.
CULPEPPER, J. ad hoc, recused.
SANDERS, Chief Justice (dissenting in part).
In 1971, this Court reiterated the principles governing appellate review of quantum in Miller v. Thomas, 258 La. 285, 246 So.2d 16. There, we stated:
"From these decisions, two principles emerge: (1) To modify the amount of an award for general damages, an appellate court must find that the trial judge or jury has abused the `much discretion' accorded by the codal provision; (2) The awards in other cases serve only as an aid in determining whether there has been an abuse of discretion and rivet no steel frame of uniformity."
Application of these principles to the present case force me to conclude that the trial judge abused his discretion in fixing the award at $100,000.00.
At the time of the injury, plaintiff was an 18-year-old, unmarried farm worker, who had dropped out of school in the ninth grade. He was working part-time for one of the defendants, earning $1.60 per hour.
At the time of the trial, he was married and had permanent employment with a sand and gravel company, earning $2.20 per hour.
Although they erect no steel frame of uniformity, the awards in somewhat similar *48 cases range from $12,000.00 to $50,000.00. Typical are these: Tyler v. United States Casualty Company, La.App., 127 So. 2d 804 (1961), $12,000.00 for loss of left eye by 30-year-old plaintiff; Theriot v. Gianelloni, La.App., 121 So.2d 275 (1960), $10,000.00 for loss of eye by 45-year-old plaintiff; Johnson v. Louisiana Coca-Cola Bottling Co., La.App., 63 So.2d 459 (1953), $12,500.00 for loss of eye by 27-year-old plaintiff; Teissier v. Stewart, La.App., 121 So. 777 (1953), $12,000.00 for loss of eye by 9-year-old child; Roberie v. Sinclair Refining Co., La.App., 252 So.2d 488 (1971), $22,000.00 for loss of vision in one eye and partial loss of vision in the other to 43-year-old plaintiff; Sistrunk v. Aetna Casualty and Surety Co., La.App., 267 So. 2d 784 (1972), $31,000.00 for loss of sight in right eye and loss of depth perception in the other to 58-year-old married woman.
Taking into account all pertinent factors, including the decreased purchasing power of the dollar, I am of the opinion that a reduction to $50,000.00 would bring the award within the range of discretion.
For the reasons assigned, I respectfully dissent.
NOTES
[1] Champion's insurer, Louisiana Farm Bureau Mutual Insurance Company, argues in brief that it is not liable because the policy contains the following exclusionary clause:

"This policy does not apply: Under Coverage E . . .
Personal Liability . . .
(f) to bodily injury or property damage which is either expected or intended from the standpoint of the insured."
We denied the writ application of Farm Bureau because that defendant failed to apply timely for a rehearing to the Court of Appeal. Art. 7, § 11, La.Const.1921. When we grant writs, the case is before us as if on appeal (Art. 7, § 11, La.Const.1921) and the respondent is in the posture of appellee, who must have timely taken the procedural steps required (as answering the appeal) to obtain a modification of the judgment for his benefit.
At any rate, two recent decisions of other states have interpreted this policy provision contrary to the interpretation urged by Farm Bureau. Hartford Fire Insurance Co. v. Wagner, Minn., 207 N.W.2d 354 (1973); State Farm Fire & Casualty Co. v. Muth, Neb., 207 N.W.2d 364 (1973).