336 So.2d 299 (1976)
Mrs. Patsy W. TEMPLE, Individually, etc., et al.
v.
LIBERTY MUTUAL INSURANCE CO. et al.
No. 10290.
Court of Appeal of Louisiana, First Circuit.
June 30, 1976.
Rehearing Denied August 27, 1976.
Writ Refused November 19, 1976.
Arthur B. Haack, W. P. MacMurdo, Baton Rouge, for appellants.
Robert J. Vandaworker, Baton Rouge, for appellees.
Before LANDRY, COVINGTON and PONDER, JJ.
*300 LANDRY, Judge.
This matter is before us on remand from the Honorable Supreme Court, State of Louisiana, with directions to render judgment herein on the quantum of damages due plaintiffs Patsy W. Temple, Forrest Keith Temple, Kim Renee Temple, and Kerri Lynne Temple, widow and children, respectively, of decedent, Billy Ray Temple, for the alleged wrongful death of said decedent resulting from injuries sustained in an automobile accident. See Temple v. Liberty Mutual Insurance Company, et al, Numbers 56,803 and 56,928, rendered by the Supreme Court on February 23, 1976, La., 330 So.2d 891, rehearing denied May 14, 1976.
The Supreme Court order of remand mandates this court to "exercise its constitutional duty to review the law and facts and thereafter render a judgment on quantum based upon the merits, determining whether the jury has abused the "much discretion" that the law accords it in awarding damages".
Decedent was 40 years of age when he died on February 28, 1973, of injuries sustained in an accident which the trial jury and this court found to have resulted from the negligence of an insured of defendant Liberty Mutual Insurance Company. Mrs. Temple, the surviving widow was 36 years old when decedent died. The children, Forrest Keith, Kim Renee, and Kerri Lynne were 17 years and ten months, 15 years and nine months, and 13 years and six months of age when their father expired.
For a period of approximately 16 years, terminating approximately 2 years before his death, Decedent was primarily employed as a photo-engraver by a Baton Rouge newspaper. During this same period decedent also did part time work as a pipe-fitter welder. From these combined sources decedent earned approximately $10,000.00 annually. About two years before he died, decedent resigned his employment with the newspaper and began part time work with a photo-engraving firm operated by a friend and known as Graphic Color Center, which concern had its principal place of business in Baton Rouge. During the years 1972 and 1973, decedent worked as a pipe-fitter welder in addition to his work with Graphic Color Center. Decedent's income tax return for the year 1972 shows gross earnings in the sum of $13,099.00 of which amount $2,241.94 was earned by Mrs. Temple as a bookkeeper. In 1973, decedent reported earnings of $9,000.00. Mrs. Temple explained this reduction in income was due to decedent having worked only 9 months of the year, the remainder of which he spent in an extended vacation. During the two years decedent worked for Graphic Color Center, immediately preceding his death, he received some cash income for services rendered the corporation. He was also issued some corporation stock, apparently in part for funds invested in the corporation and in part for services rendered. Approximately one year before decedent died, the corporation moved from Baton Rouge to North Carolina. Mrs. Temple testified the corporation owed decedent additional stock for services rendered but that shares in payment had never been issued. The record does not indicate the status of the corporation since its move out of the state. Neither is the value of decedent's stock shown. It is conceded no dividends have ever been received on the stock. The record is silent as to the present or future prospect of stock dividends or earnings.
Mrs. Temple and the children testified that the family was close knit; that decedent was a devoted father and husband as well as a good provider; that the family acted in concert in such matters as church attendance and engaging in recreational activities of common interest to all and in which all could participate. Neighbors and acquaintances attested that decedent was a highly religious and moral individual; that decedent was well read; that decedent *301 spent considerable time counseling and advising his children; and that decedent was very close to his children.
However, Mrs. Temple conceded she and decedent had been separated three times during their married life, once for a period of approximately six weeks, the last separation having occurred in May, 1973. She added that during these periods of separation she and decedent saw each other quite a bit and frequently spent the night together.
The trial jury awarded Mrs. Temple damages in the amount of $411,500.00 and awarded each child recovery in the sum of $111,500.00 with no attempt at itemization of the various elements of damages for which recovery was granted.
Pursuant to instruction from the Supreme Court we take cognizance of and apply the rule that awards for damages lie within the much discretion of the trier of fact and are not to be disturbed on appeal except on a clear showing of an abuse of such discretion. Fox v. State Farm Automobile Insurance Company, La., 288 So.2d 42; Walker v. Champion, La., 288 So.2d 44; Anderson v. Welding Testing Laboratory, Inc., La., 304 So.2d 351.
We are also mindful of the principle that awards in similar cases of this nature do not provide a scale of uniform awards in other cases involving comparable injuries, but serve only as aids in determining whether a particular award is so greatly disproportionate to awards for truly similar injuries or losses that an abuse of discretion is thereby shown. Walker and Anderson, above.
We note that in each instance Fox, Walker and Anderson, above, involved an award to a living person for personal injuries sustained. Fox involved a whiplash injury for which an award of $25,000.00 was reduced to $10,875; Walker was concerned with the loss of an eye for which an award of $100,000.00 was decreased to $35,000.00; and Anderson dealt with a hand injury for which a judgment of $25,000.00 was pared to $10,000.00. In each case the Supreme Court ordered restitution of the original award.
In its instruction to this Court the Supreme Court clearly indicated that insofar as concerns recovery for decedent's alleged pain and suffering, the rule announced in Andrus v. White, La.App., 101 So.2d 7, is controlling, which rule provides as follows:
"If there was a scintilla of evidence of any suffering or pain on the part of the deceased by his actions or otherwise during his unconscious hours from the time he was injured until his death we would not hesitate to affirm or increase, if the evidence justified, the award for this item. We cannot assume nor substitute an unsupported belief that he must have suffered, in the absence of competent testimony that should and could have been produced if it were true."
Additionally the Supreme Court cited numerous authorities for the proposition that recovery for pain and suffering of a decedent is warranted where the record contains evidence that the decedent made noises and movements indicating his sensitivity to and awareness of pain, though unconscious.
In fixing the awards for loss of support herein we assume a 25 year work life expectancy for decedent which would carry to decedent's 67th year. Based on his earnings as welder-pipefitter during the calendar year 1972, in the approximate sum of $11,000.00, decedent's highest earning year shown, we calculate decedent had a potential lifetime earning capacity of $275,000.00. Admittedly, this figure does not include wage increases which have become the rule in our present day economy, especially in the construction trade in which decedent was engaged. On the other hand, our computation makes no reduction for income taxes, social security payments and other deductions from income which have *302 become part of our present day economy. Moreover, we consider that the amount awarded will be receivable at present in a lump sum and may be invested, at least in part, to earn interest as income. Considering all aspects of this case we find Mrs. Temple is entitled to the sum of $105,000.00 for the loss of income and support she could have expected. We believe any award in excess of this sum would constitute a clear abuse of the discretion involved in matters of this nature.
Considering the award for pain and suffering endured by decedent, we note the testimony of Thomas L. Tyler, who was among the first to reach the accident scene. Tyler stated he found decedent slumped over on the front seat of decedent's vehicle. He noted decedent making gagging sounds similar to snoring. He also stated he noted signs of life exhibited by decedent until Tyler and a friend, Tommy Caves, left the scene to summon the police and an ambulance. He did not know how long decedent's signs of life continued. An investigating officer, Ray Farris, testified he was informed by a fellow officer, Shirley, that Shirley had observed decedent move or make a sound or something to that effect. Decedent was pronounced dead on arrival at the hospital. Mrs. Temple testified that upon viewing decedent's body in the morgue a few hours after the accident, decedent's facial expression evidenced pain similar to what she had noticed when decedent endured pain while living. Under the circumstances, we find evidence to support the conclusion that decedent suffered conscious pain for which recovery should be awarded in the sum of $10,000.00 of which sum Mrs. Temple is entitled to receive $2,500.00.
Deducting our award of $105,000.00 for loss of support, and $2,500.00 for Mrs. Temple's share of the award for decedent suffering, would leave an award of $304,000.00 for loss of love and affection if the jury award were allowed to stand.
The difficulty in making awards for the loss of love and affection resulting from the death of a spouse is graphically illustrated in two recent cases. In Tillman v. Canal Insurance Company, La.App., 305 So.2d 602, a widow of a man of decedent's approximate age was granted $35,000.00 for the loss of her husband's love and affection. However, in Cacibauda v. Gaienne, La.App., 305 So.2d 572, a 53 year old widow of a deceased 52 year old husband was awarded $95,000.00 for loss of love and affection.
We deem an award to Mrs. Temple in the sum of $304,000.00 for loss of love and affection would be inordinately disproportionate to awards heretofore made in similar cases. We deem an award of this magnitude to be totally unsupported by the record before us which, among other things, establishes a marital history involving three separations, one of which occurred approximately one year prior to decedent's death. We find, however, the record supports an award of $40,000.00 to Mrs. Temple for this item of damages. The record also establishes funeral expenses and other special damages totalling $2,009.10 which Mrs. Temple is entitled to recover. We find Mrs. Temple entitled to a total award of $149,509.10.
We find no basis in the record for allowing recovery for loss of income predicated upon decedent's earnings from photo engraving work.
Forrest Keith Temple, attained majority three months after his father's death. At the time of trial this young man was employed and also attending college as a student of electrical engineering. Irrespective of the needs of one's children, recovery for loss of a parent's support may be predicated only upon the parent's demonstrated ability to provide that support. We find an award of $8,000.00 to Forrest Keith Temple will adequately compensate him for this loss.
*303 In the cases of Kim Renee and Kerri Lynne Temple, we find an award of $12,500.00 and $20,000.00, respectively, will adequately compensate these parties for the loss of income and support resulting from decedent's demise. In addition, the children are each entitled to the sum of $2,500.00 as their share of the award for decedent's pain and suffering.
The foregoing awards to the children would leave recovery of $89,000.00 to Forrest Keith Temple; $96,500.00 to Kim Renee Temple; and $89,000.00 to Kerri Lynne Temple, for loss of the love and affection of decedent if the jury awards were allowed to stand. Such awards we deem greatly disproportionate to recent awards in cases dealing with similar circumstances.
In our judgment no mathematical ratio may be employed to determine whether an award is so disproportionate to similar awards as to constitute an abuse of the much discretion vested in the trier of facts. In other words, an award which is three, four or five times prior awards in similar cases involving a like or identical loss or deprivation, may not constitute an abuse of discretion under the facts of a given case, and therefore not be reducible. On the other hand, however, an award which is only double or less than twice prior awards for a comparable injury or loss, may constitute an abuse of the discretion vested in the trier of facts. In this instance we find the trier of facts has abused its discretion in making the awards granted herein.
The circumstances considered, we deem an award to each child in the sum of $30,000.00 for the loss of decedent's love and affection will provide adequate compensation for this item of damages. We therefore find Forrest Keith Temple entitled to a total award of $40,500.00; Kim Renee Temple entitled to a total of $45,000.00; and Kerri Lynne Temple entitled to $52,500.00.
It is ordered, adjudged and decreed that the judgment of the trial court be amended to reduce the award to Mrs. Patsy W. Temple from $411,500.00 to $149,509.10; to reduce the award to Forrest Keith Temple from $111,500.00 to $40,500.00; to reduce the award to Mrs. Patsy W. Temple, Tutrix of the Minor Kim Renee Temple from $111,500.00 to $45,000.00; and, to reduce the award to Mrs. Patsy W. Temple, Tutrix of the Minor Kerri Lynne Temple from $111,500.00 to $52,500.00. In all other respects the judgment of the trial court is affirmed, all costs of these proceedings to be paid by defendant Liberty Mutual Insurance Company.
Amended and affirmed.