346 So.2d 333 (1977)
Mrs. Gail Gaudet, wife of/and Philip GAUDET
v.
ALLSTATE INSURANCE COMPANY and Leopold J. Schouest.
No. 8068.
Court of Appeal of Louisiana, Fourth Circuit.
May 17, 1977.
Rehearing Denied June 7, 1977.
*334 Porteous, Toledano, Hainkel & Johnson, Christopher E. Lawler, Daniel R. Hynes, New Orleans, for defendant-appellant.
Wiedemann & Fransen, Lawrence D. Wiedemann, New Orleans, for plaintiffs-appellees.
Before LEMMON, STOULIG and BEER, JJ.
BEER, Judge.
Mr. and Mrs. Philip Gaudet were injured in an automobile accident on June 4, 1973. Liability and insurance coverage were stipulated. Quantum was the sole issue before the trial court.
Judgment was rendered, awarding Philip Gaudet $1,500.00 in general damages and $3,820.73 in special damages which included $3,765.73 for the special damages attributable solely to Mrs. Gaudet including:

West Jefferson General Hospital $ 822.30
Drugs 96.37
Mercy Hospital 1,045.06
Dr. Villemarette 367.00
Dr. Kleinschmidt 385.00
Dr. Vogel 1,050.00.

Mrs. Gaudet was awarded $40,000.00 in general damages, but this amount was designated by the trial court to include "all future medical expenses which will probably amount to a very significant sum. . ." (emphasis ours). Since the trial court awarded special damages covering all medical charges previously incurred by Mrs. Gaudet directly to her husband, it is remarkable, we believe, that an award was made directly to Mrs. Gaudet for her "future medical expenses." Indeed, this unusual procedure seems to give some substantiation to appellants' vigorous oral contention that the trial judge confused this case with another (which he also had taken under advisement), particularly in view of the fact that there is nothing in this record to indicate that there will be any future medical expenses whatsoever incurred by Mrs. Gaudet, nor was any claim made for future medical expenses, nor was any proof adduced or even sought to be adduced that could support any claim for future medical expenses.
A motion for new trial was denied, and defendants suspensively appeal, specifying the amounts awarded to be so excessive as to constitute manifest error.
Mr. Gaudet had suffered a tendon laceration of his right hand in an unrelated accident and had been treated by Dr. Kleinschmidt. After the accident here involved, he complained of swelling in his right middle finger and also complained of back pain. On June 5, Mr. and Mrs. Gaudet were seen by Dr. Hubert Villemarette, a general practitioner, who referred Gaudet to Dr. Arthur Kleinschmidt because he had previously treated Gaudet for the hand injury above described. When he was seen by Dr. Kleinschmidt, Gaudet's back complaint had "resolved itself with no partial permanent physical impairment," and his finger problem was, except for a short period of swelling, *335 also resolved. He was completely asymptomatic by June 13th.
When Gail Gaudet was seen by Dr. Villemarette on the day after the accident, he found a mild cervical sprain and contusions of the left elbow and left shoulder and prescribed muscle relaxants and rest. Thereafter, due to continued subjective complaints, which he was unable to reconcile with generally negative objective findings, he referred Mrs. Gaudet to Dr. Kleinschmidt. He first saw her on July 25th and concluded that Mrs. Gaudet had suffered a muscular or ligamentous strain in the cervical area of a type which "usually resolve themselves with no partial or permanent physical impairment." Dr. Kleinschmidt saw her again in November, at which time he hospitalized her for "a course of traction, a little more aggressive treatment." However, at the time of her hospitalization, the results of his examination were completely negative. He states: "Well, actually, on examination, examination (sic) was negative. There was no muscle spasm. There was excellent motion, full range of motion." Continuing with his objective findings, he states: "Neurological examination of the upper extremities was completely negative. There was no evidence of nerve root involvement."
At any event, by November 26th, Dr. Kleinschmidt found her to be "completely asymptomatic." In his words, "She was experiencing no pain at all. Examination revealed no muscle spasms of the cervical spine, full range of painless motion through the cervical spine in all directions. . ."
Though she returned to Dr. Kleinschmidt's office in December and was re-examined at that time, he indicates that "Examination on that date was again within normal limits, no muscle spasm, and normal motion." Dr. Kleinschmidt was of the opinion that Mrs. Gaudet had suffered "a mild injury even though she made persistent complaints of pain for rather a long period of time; . . ."
Mrs. Gaudet first saw Dr. Vogel in the latter part of June, 1974, after being referred to that physician by her attorney. On the basis of the examination which Dr. Vogel conducted at that time (over a year after the accident), he stated: "It was my impression that the patient had experienced a subscapular herniated cervical disc." However, a myelogram made on June 23, 1974, was normal, and Dr. Vogel changed his original diagnosis concerning the subscapula herniated disc. Soon thereafter (two days), without any apparent reference back to the lack of any objective findings on the part of Dr. Kleinschmidt or any apparent consideration thereof, Dr. Vogel performed what he describes as a rhizotomy. This procedure required Mrs. Gaudet to be hospitalized for approximately three days and resulted in the following observation by Dr. Vogel: "I am optimistic that my procedure will resolve her problems. There is no way that I can look into the future and tell for sure and promise this lady that she will never have problems." Dr. Vogel indicated that Mrs. Gaudet had a normal post-operative course; that her neck and referred pain problems had been resolved; that the residual tenderness at the side of the rhizotomy will subside; that no actual loss of body structure has resulted from her injury; and that she will have no disability as a consequence of the rhizotomy.
Although Mrs. Gaudet consistently related subjective pain symptoms to the various physicians, none, including Dr. Vogel, ever clearly found and reported any conclusive or strongly suggestive objective disc pathology.[1] Dr. Vogel, whose first examination of Mrs. Gaudet was over a year after the accident, recommended, and soon thereafter performed, a rhizotomy, a pain-reducing procedure which does not affect the functional motor aspects in any way. Dr. Vogel felt that Mrs. Gaudet responded well to his *336 recommended procedure and concluded that she would only be discomforted for a short time, post-operatively. Both Dr. Villemarette and Dr. Kleinschmidt, having closely followed Mrs. Gaudet during the entire year after the accident, had previously concluded that she had incurred a moderate or mild cervical sprain.
With this medical history before us, we turn to a consideration of the quantum awards:
The primary authority for the principle that "much discretion" must be afforded the trier of fact in the assessment of damages for offenses is the Louisiana Civil Code.[1a]" Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963), reaffirmed the codal provision that quantum determinations may not be altered absent a showing that the trial court abused its "great discretion." Subsequent appellate court efforts toward "uniformity of awards" have been criticized for being inconsistent with the principle of "great discretion" vested in the trier of fact. Thus, awards in other cases have been relegated to offering, at best, a vague guideline to determine whether there has been an abuse of discretion. The Gaspard court, on rehearing, reluctantly salvaged a minimum basis for considering comparable cases with this statement:
"In view of our codal provision, the appellate courts should consider the amounts of awards in other cases only so far as they are relevant to the question of whether the judge or the jury has abused its discretion in fixing the award in the case under consideration."
The principles, articulated in Gaspard, were reiterated in Ballard v. National Indemnity Company of Omaha, Neb., 246 La. 963, 169 So.2d 64 (1964); Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127 (1967); Miller v. Thomas, 258 La. 285, 246 So.2d 16 (1971); Walker v. Champion, 288 So.2d 44 (La., 1973); Fox v. State Farm Mutual Automobile Ins. Co., 288 So.2d 42 (La., 1973); Boutte v. Hargrove, 290 So.2d 319 (La., 1974); Spillers v. Montgomery Ward & Co., 294 So.2d 803 (La., 1974); Revon v. American Guarantee & Liability Ins. Co., 296 So.2d 257 (La., 1974); Bitoun v. Landry, 302 So.2d 278 (La., 1974); Anderson v. Welding Testing Laboratory, Inc., 304 So.2d 351 (La., 1974).
Most recently, the Louisiana Supreme Court, in Coco v. Winston Industries, Inc., 341 So.2d 332 (La., 1976), attempted to further instruct intermediate appellate courts regarding their ambit of review. With all due respect, implementation of this most recent case is, to some degree, irreconcilable with our constitutional mandate.
The Louisiana Constitution of 1921,[2] and the Louisiana Constitution of 1974,[3] extends the jurisdiction of the intermediate appellate courts to review questions of fact and law. Yet, the recent extreme emphasis of the "much discretion" theory has eroded or, perhaps, all but done away with our ability to consider similar cases when attempting to decide if the trial court has, in fact, abused its discretion.
Justice McCaleb, in a dissenting opinion in Gaspard, expressed this same feeling of *337 alarm at the paradox which the Gaspard rationale poses for appellate courts:
"Indeed, if prior awards in cases involving similar injuries are of little value, how will the appellate courts of this State perform their constitutional obligation of review on facts as well as law? The majority perforce acknowledges that prior awards must necessarily be considered in determining whether the judge or jury has abused his or its discretion. But, after making this concession, the Court, apparently disregarding the prior jurisprudence, simply concludes that, because plaintiff has suffered pain and fibrosis in the injured tissues, the jury did not abuse its `large' discretion in giving her $19,500, or almost three times more than has heretofore been awarded for similar injuries. Under this reasoning, what set of facts and circumstances would be required for a verdict to be excessive? Must it be 5 or 10 or 20 times more? Is there to be no precedent to which reference may be made in the determination of just compensation or shall the appellate courts hereafter merely nod their heads in abstract approval of speculative estimates of trial judges and juries? And should trial judges instruct themselves and their juries to give consideration to prior awards in similar cases in reaching their conclusions?"
In Safer v. Gilbert, 161 So.2d 430 (La. App. 1st Cir., 1964), Judge Herget, in his concurring opinion, recognized appellate review of facts and law to be a constitutional right; if the constitutional right is subordinated to or restricted by the codal grant of "much discretion" to the trier of fact, then such codal provision is, he submits, unconstitutional.
By 1965, two years after Gaspard, one commentator[4] discussed the problem which, we believe, is diluting the constitutional jurisdiction of intermediate appellate courts, observing:
"The problem of appellate review of awards which are difficult to assess may be summarized in three statements. First, Louisiana Civil Code Article 1934(3) grants the trial court a large degree of discretion in this area. Second, despite this discretion, the Louisiana Constitution requires appellate review of these awards. Third, since such awards are, by nature, arbitrary, the appellate courts' natural point of reference in determining whether or not an award is proper is to consider previous awards in similar cases." (Footnotes omitted.)
However, that commentator suggested that Gaspard was only a warning that emphasis should be shifted away from awards in similar cases, although it was admitted that ". . . for lack of a better guide, awards in previous, similar situations will be used in determining whether the award of the trial court, notwithstanding its undisputed discretion in the area, will be altered." Finally, the comment concludes:
"The obvious problem which arises is, of course, how to determine whether an abuse of discretion has occurred. The phrase does not readily lend itself to precise definition, and no attempt at defining it has been made in the cases, but its ambit seems to be somewhere between mere `error' and `manifest error.'" (Footnote omitted.)
Eleven years after that comment, the same questions were being asked:
"But when has the trial judge crossed the forbidden barrier and `abused his discretion'? * * * There is little guidance in the jurisprudence to determine what constitutes an abuse of discretion." [5]
And the same answers were being given:
"It seems to be a necessary inference from the foregoing that if an abuse of discretion is to be shown, it must be on the basis of prior awards in similar cases." [6] *338 In Hoffman v. All Star Ins. Corp., 288 So.2d 388 (La.App. 4th Cir., 1974) cert. den. La., 290 So.2d 909, we noted that while the jurisprudence is to the effect that the trier of fact has much discretion in making general damage awards, ". . . we have the onerous constitutional duty to review the facts and to increase or reduce general damage awards resulting from an abuse of discretion by the trial court. LSA-Const. Art. 7, Sec. 29."
In Spillers v. Montgomery Ward & Co., 294 So.2d 803 (La., 1974), the Supreme Court suggested that one method of testing whether the trial court abused its discretion is to determine whether the award of the jury can be supported by the record:
"Perhaps our courts should define the `much discretion' as used in Civil Code Article 1934(3). Certainly the redactors did not intend to grant unlimited authority to a trial judge or jury to make an award without any reasonable basis in the record to support it."
On rehearing, in Reggans v. Aetna Casualty & Surety Company, 308 So.2d 898 (La. App. 2nd Cir., 1974) cert. den. 310 So.2d 642, 646, our brethren of the Second Circuit, sitting en banc, noted the role of the appellate courts to be "most perplexing" in light of the apparent conflict between the constitutional mandate and Louisiana Civil Code Art. 1934(3) granting "much discretion." After briefly discussing Gaspard and Spillers, the court made the following observation before approving their original decree substantially reducing the trial court's award to two of the plaintiffs:
"Since the jury does have, under the law, much discretion in fixing damages, a more appropriate method of testing whether the jury had abused its discretion is to determine whether the award of the jury can be supported under the evidence."
An overall examination of the cases since Walker v. Champion, supra, shows that there has been a consistent pattern of reversal of intermediate appellate court reductions of the trial award.[7] It has been noted that such a line of cases gives the trier of fact "virtually unchecked discretion," and "in effect precludes appellate review of quantum." [8]
While the intermediate appellate courts are still expected to review quantum awards,[9] the Louisiana Supreme Court, in the post- Walker cases epitomized in Coco v. Winston Industries, Inc., supra, has effectively barred the intermediate appellate courts from making use of most available tools to aid in the review of quantum awards, including similar case awards. Gaspard and those subsequent cases leading to Coco apparently intended awards in other cases to play some role in the formulation of what would ultimately constitute a reasonable ambit of award for the case presented to an appellate court. But, now, without the benefit of the guidance from other cases (as was, we think, contemplated by Gaspard), the appellate court's role, as reviewer of facts, has been, to a telling degree, judicially purged from use. If we follow the Walker-Coco rationale and mechanically rubberstamp approval of every trial court quantum award, we violate our constitutional obligation to review facts as well as law. If we determine that there has been an abuse of discretion based upon awards in similar cases, we appear to be violating the Coco doctrine.
A recent law review case note effectively states the case:
"Although article 1934(3) establishes the standard of review for damages, quantum, as an issue of fact, is still subject to the general appellate review provided for in the constitution. Appellate review is subject to limited modification by the Code article since, even where no standard *339 of review is specified, appellate courts, by judicial initiative, reverse factual determinations only when the trier of fact has committed `manifest error.' Nevertheless, the supreme court cannot legitimately interpret the Code article as a legislative abandonment or rejection of appellate review of fact since the constitution is premier in the hierarchy of legal authority. That article 1934(3) cannot vest such extensive discretion, at the expense of the constitutional provision, is further evident in that the discretion afforded by the article is limited by a Code provision, article 2315, so as to preclude the award of punitive damages.
"The Walker line of cases may simply reflect the court's overly solicitous attention to article 1934(3) and the `much discretion' it vests in the trier of fact; or, it may be that the court's rigid application of the article to reverse appellate reductions and reinstate higher trial awards is intended to raise the basic level of quantum recovery. In either case, the Walker line has so emasculated appellate review of fact that the supreme court has accomplished judicially what could not be accomplished legislatively. The court should reaffirm the fundamental role of appellate review of fact, apply article 1934(3) less mechanically, abandon the perfunctory Walker approach, and return to the moderate and flexible Gaspard approach." (Footnotes omitted.)[10]
There appears to be only one ambit of consideration left to us; an autonomous review of the record to determine if it can possibly support the judgment. That is what we have done. We find the trial court's general damage awards to be unsupported by the evidence. See Duffy v. Throwbridge, 327 So.2d 649 (La.App. 4th Cir., 1976) writs granted La., 332 So.2d 280, certiorari rescinded 335 So.2d 30 (La., 1976). The record indicates to us that the trial court awards of general damages to Mr. and Mrs. Gaudet so deviate from the sphere of awards which could reasonably be within the discretion allowed that court by such a degree as to require that we disregard them and proceed on our own.
We reduce the general damage award to Mr. Gaudet to $500.00, and we reduce Mrs. Gaudet's general damage award to $10,000.00. These amounts represent the highest awards that can reasonably be made within the discretion that should have been exercised by the trial court.[11]Coco v. Winston Industries, Inc., supra. In other respects, the judgment is affirmed. Each party to this appeal is to bear his own costs.
AMENDED AND RENDERED.
LEMMON, J., concurs in the result.
NOTES
[1] Dr. Vogel's testimony regarding a theoretically possible, computerized, percentage-based "diagnosis" of disc involvement is not, in any way, supported by any clinical findings that were ever noted by either Dr. Villemarette or Dr. Kleinschmidt throughout their treatment of Mrs. Gaudet.
[1a] La.Civil Code art. 1934(3) (1870): "Although the general rule is, that damages are the amount of the loss the creditor has sustained, or of the gain of which he has been deprived, yet there are cases in which damages may be assessed without calculating altogether on the pecuniary loss, or the privation of pecuniary gain to the party. Where the contract has for its object the gratification of some intellectual enjoyment, whether in religion, morality or taste, or some convenience or other legal gratification, although these are not appreciated in money by the parties, yet damages are due for their breach; a contract for a religious or charitable foundation, a promise of marriage, or an engagement for a work of some of the fine arts, are objects and examples of this rule.

"In the assessment of damages under this rule, as well as in cases of offenses, quasi offenses, and quasi contracts, much discretion must be left to the judge or jury, while in other cases they have none, but are bound to give such damages under the above rules as will fully indemnify the creditor, whenever the contract has been broken by the fault, negligence, fraud or bad faith of the debtor."
[2] La.Const. art. 7, Sec. 29 (1921).
[3] LSA-Const. Art. 5, Sec. 10.
[4] Comment, "The Effect Of Gaspard V. LeMaire On Awards For General Damages," XXV La.L.Rev. 545, 546 (1965).
[5] Crawford, "Work of Appellate Courts for 1974-1975Torts," 36 La.L.Rev. 400, 406 (1976).
[6] Id.
[7] Note, "Assessment of Damages  Louisiana Civil Code Article 1934(3) Appellate Review of Factfinder's Discretion," 49 Tul.L.Rev. 460, 462, esp. n. 18 (1975).
[8] Id. at p. 465.
[9] Coco v. Winston Industries, Inc., supra; Gonzales v. Xerox Corporation, 320 So.2d 163 (La., 1975); Temple v. Liberty Mutual Ins. Co., 330 So.2d 891 (La., 1976).
[10] See footnote # 7, supra, at p. 466.
[11] Quaere, however, as to what is "highest possible" award in view of the admonition not to be guided by any other cases or any other awards? In this instance, we have concluded that $500.00 and $10,000.00 represent the highest conscionable awards that are consistent with the fair and proper administration of justice.