366 So.2d 621 (1978)
Effie LANCLOS et al., Plaintiffs-Appellees,
v.
HARTFORD ACCIDENT & INDEMNITY COMPANY et al., Defendants-Appellants.
No. 6738.
Court of Appeal of Louisiana, Third Circuit.
December 20, 1978.
*622 Lewis & Lewis, John M. Shaw, Opelousas, for defendants-appellants.
J. Wendel Fusilier, Ville Platte, for plaintiffs-appellees.
Before DOMENGEAUX, WATSON and GUIDRY, JJ.
WATSON, Judge.
In the afternoon of December 15, 1975, on one of the principal streets of Ville Platte, Effie Lanclos and her mother, Lois Bellard, were standing between the rear of a parked Ford truck and the front of a Buick automobile when a Chevrolet truck struck the *623 rear of the Buick causing the lower extremities of the two ladies to be crushed between the two parked vehicles. As a result of the accident, Effie Lanclos, and her husband, Robert Lanclos, as well as Lois Bellard, and her husband, Noah Bellard, filed suit against the defendants: Tate Oil Products and/or Tate Oil Products, Inc., the owner of the Chevrolet truck; Dudley Guillory, the driver of the Chevrolet truck;[1] Hartford Accident & Indemnity Company, the primary liability insurer of the defendants; and Ranger Insurance Company, the excess liability insurance carrier.
Hartford had limits of $100,000, while the Ranger policy, described as an "umbrella excess liability policy" was written in favor of "Renee A. Tate, d/b/a Tate Oil Products; Tate Oil Products, Inc." in the amount of $1,000,000.
Following trial by jury, verdicts were returned against Hartford and Ranger and in favor of the plaintiffs in the following amounts.

Effie Lanclos:
Past physical pain and
 mental suffering $235,000
Future pain and suffering $116,000
Loss wages from 12/15/75 $ 23,400
Future loss of wages $108,000
Permanent disability $135,000
Robert Lanclos:
Medical expensces to date of trial $ 20,322
 Future medical expenses $ 33,750
Lois Bellard:
Past physical pain and
 mental suffering $142,000
Future pain and suffering $ 27,000
Permanent partial disability and
 limitation of activities $ 50,000
Noah Bellard:
Medical expenses to date of trial $ 16,894.05
Future medical expenses $ 5,500

A judgment was signed in the stated amounts except that the awards to Robert Lanclos and Noah Bellard for their wives' medical expenses were reduced without objection to $42,075.62 and $15,702.95, respectively, the lesser amounts prayed for in their petition.
After the judgment was signed, Hartford paid the amounts for which it had been cast; that is, the sum of $100,000 to the Bellards and $100,000 to the Lanclos, plus interest and appropriate court costs.
Ranger, the excess insurer, has appealed from the judgment.
While some argument has been presented on the issue of liability, no manifest error is reflected by the record and it is not necessary to detail that issue.
Another incidental issue is presented relative to certain photographs (Kodachrome color transparencies, P-34 in globo) which were made by Dr. Bordelon in the operating room just prior to surgery, and which were admitted over objection into evidence.[2] The trial judge ruled that their probative value out-weighed any inflammatory effect and we find no error. State v. Redwine, 337 So.2d 1041 (La.1976).
The serious issue presented by the appeal is whether the damage awards are within the range of the "much discretion" accorded to the trier of fact under Civil Code Article 1934. Ranger argues very strenuously and very persuasively that the amounts awarded exceed the highest possible damages which could have been allowed by the jury. Ranger attacks both the general awards to Effie Lanclos and Lois Bellard and the special awards, the latter in particular as to calculation of Effie Lanclos' future medical and loss of wages, both past and future.

Applicable Principles of Law
Before considering the various items of damages, we will recognize the appropriate standards of appellate review of quantum. These are cataloged in detail by Justice Calogero in Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1977). We will quote at length from Coco, which reviews *624 the jurisprudential interpretation of LSA-C.C. art. 1934, and states:
. . . principles announced in Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963); Ballard v. National Indemnity Company of Omaha, Neb., 246 La. 963, 169 So.2d 64 (1964); Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127 (1967); and restated in a number of cases since, including these: Anderson v. Welding Testing Laboratory, Inc., 304 So.2d 351 (La.1974); Bitoun v. Landry, 302 So.2d 278 (La.1974); Revon v. American Guarantee & Liability Ins. Co., 296 So.2d 257 (La.1974); Spillers v. Montgomery Ward & Co., 294 So.2d 803 (La.1974); Boutte v. Hargrove, 290 So.2d 319 (La.1974); Fox v. State Farm Mutual Automobile Ins. Co., 288 So.2d 42 (La.1973); Walker v. Champion, 288 So.2d 44 (La.1973); and Miller v. Thomas, 258 La. 285, 246 So.2d 16 (1971).
In the foregoing cases we have repeatedly referred to the Article 1934(3) assertion that in the assessment of damages in cases of offenses, quasi offenses and quasi contracts," much discretion must be left to the judge or jury."
And we have asserted, initially in Miller v. Thomas, supra at p. 19 that
"From these decisions, two principles emerge: (1) To modify the amount of an award for general damages, an appellate court must find that the trial judge or jury has abused the `much discretion' accorded by the codal provision; (2) The awards in other cases serve only as an aid in determining whether there has been an abuse of discretion and rivet no steel frame of uniformity."
Recitation of the principles governing the legal issue presents no problem for our appellate courts. It is the application of those principles to particular cases which has proved difficult on occasion. Two questions are especially troublesome. What, in a given case, constitutes an acceptable quantum judgment in the sense of its being neither excessive nor inadequate within the framework of the legally-directed "much discretion" accorded judge or jury? When do awards in other possibly similar, reported cases properly aid (or erroneously mislead) an appellate court in determining whether there has been an abuse of discretion by a given judge or jury?
The appellate court is aided in answering these questions by such later expressions of this Court as these:
"Unless the record demonstrates that the trial court abused the `much discretion' provided for in fixing damages (C.C.1934), the appellate court should not disturb the award. . . . The question is not whether a different award might have been more appropriate, but whether the award of the trial court can be reasonably supported by the evidence and justifiable inferences from the evidence before it. That such evidence might also support a greater (or smaller) award will not justify a change in the amount by the appellate court." Bitoun v. Landry, supra at 279.
"A reviewing court might well disagree with the amount of the award fixed by the jury, but it is not entitled to substitute its opinion for that of the trier of fact." Spillers v. Montgomery Ward & Company, Inc., supra at 809.
"The reduction [must be] supported by the record." Walker v. Champion, supra at 46.
"The awards made in other cases provide no scale of uniformity; their use is limited to serving as an aid to determine, if the present award is greatly disproportionate to similar awards (if truly similar), whether an issue of abuse of discretion may exist in the present case. In any event, an abuse of trial-court discretion must be clearly demonstrated by the record before an appellate court will tamper with an award of general damages." Anderson v. Welding Testing Laboratory, Inc., supra at 352.
"Adequacy or inadequacy of an award should be determined by the facts and circumstances peculiar to the case under consideration." Boutte v. Hargrove, supra at 321-22.
* * * * * *

*625 We do reemphasize, however, that before a Court of Appeal can disturb an award made by a trial court that the record must clearly reveal that the trier of fact abused its discretion in making its award. Anderson v. Welding Testing Laboratory, Inc., supra; Bitoun v. Landry, supra; Fox v. State Farm Mutual Automobile Ins. Co., supra; Walker v. Champion, supra. Only after making the finding that the record supports that the lower court abused its much discretion can the appellate court disturb the award, and then only to the extent of lowering it (or raising it) to the highest (or lowest) point which is reasonably within the discretion afforded that court. Bitoun v. Landry, supra; Spillers v. Montgomery Ward & Company, Inc., supra. It is never appropriate for a Court of Appeal, having found that the trial court has abused its discretion, simply to decide what it considers an appropriate award on the basis of the evidence.
Further we believe that, heretofore, courts of appeal have placed too much emphasis on their review of other reported decisions. Certainly no two cases are ever fully alike. And whether two cases are so similar as to produce like quantum judgments is hardly discernible by gleaning the facts of the comparable decision from simply a written opinion of an appellate tribunal. Of course, another factor bearing on this matter is that significant change has been, and is taking place in our society not the least of which are changes in economic conditions (particularly rampant inflation), fluctuating job categories, employment opportunities, and even lifestyles.
341 So.2d 334-336.

Effie Lanclos
To review the awards it is necessary to categorize the separate amounts awarded by the jury for various items as reflected in the special verdicts. (TR. 1708). These are as follows for Ms. Lanclos:

Pain, suffering and disability $486,000
Loss of wages from 12/15/75
 to trial $ 23,400
Future loss of wages $108,000

Ms. Lanclos, who was a 55 year old insurance debit sales person at the time of the accident, suffered extensive injuries to her legs for which she was hospitalized from December 5 until February 16, 1976. (She later experienced additional hospitalization). As described by Dr. R. Luke Bordelon, the orthopedic surgeon of Opelousas who was principally responsible for Ms. Lanclos' care, and as confirmed by Dr. Glynn Granger, a general surgeon who assisted, Ms. Lanclos suffered a crushing of both of her legs with an accompanying skinning of the legs "like . . . a satsuma". (TR. 2164). The right leg was described as crushed with the skin rolled loose on it; the right foot was torn open; the tendons were gone and bone was sticking out where the skin had been. Both of the bones of the right leg were broken about the middle of the calf. The left leg sustained a large cut through and through the medial and lateral aspects of the lower half of the leg; the ligaments of the left knee were torn and the inside ligaments were ripped loose. Dr. Bordelon described the right foot as being crushed across the middle with all the small bones crushed or broken, as well as the metatarsal bone. In his opinion, at the time of initial treatment, there was a strong possibility that Ms. Lanclos would lose one or both legs. (TR. 2171).
Dr. Bordelon described, in detail, his treatment of Ms. Lanclos including fixation of the bones, debridement (or clipping away) of dead skin on about twelve occasions, performance of a skin graft, and various other procedures. During her first hospital stay, Ms. Lanclos developed a severe skin rash and later, in the course of treatment, she developed a problem of spitting up blood.
Dr. Bordelon assigned Ms. Lanclos a permanent disability of the body as a whole of thirty-nine percent (39%). He added that she could perform no work which required her to be on her feet or to walk and he *626 expressed his opinion that she was permanently disabled from working. Apparently, Ms. Lanclos was able to ambulate with the assistance of crutches but further surgical procedures were not possible due to her development of certain vascular difficulties described below.
Dr. Richard Tate, a physician specializing in internal medicine, saw Effie Lanclos in May of 1977. At that time she was somewhat overweight, she had swelling in her legs and her right calf was tender to palpation. She was hospitalized for tests and a lung scan was found to be positive; that is, it revealed a filling defect in the upper section of the right lung. Thus, Dr. Tate diagnosed Ms. Lanclos as being subject to pulmonary emboli, which he attributed to her accident. (TR. 2348). He would not recommend surgery, which might slightly decrease the disability in her legs or foot, because it would endanger her life. Ms. Lanclos was put on a regime of blood thinning medication and ordered to report to Dr. Tate on a monthly basis for regular testing.
While the quantum fixed by the jury as general damages (pain, suffering, and disability) for Ms. Lanclos is very large, the award of substantial sums by judge or jury is not unknown in this circuit. See Faulk v. Power Rig Drilling Co., 348 So.2d 219 (La. App. 3 Cir. 1977) and Gordon v. General Motors Corporation, 323 So.2d 496 (La.App. 3 Cir. 1975).
The injuries sustained by plaintiff in the Gordon case, for example, are not unlike those of Ms. Lanclos, although injuries in similar cases always involve some differences, as recognized by the rule that awards in other cases serve only as an aid to determine if the award under consideration is greatly disproportionate to those truly similar. See Coco, quoted supra. Gordon suffered a laceration over the right eye, a compound comminuted fracture of the wrist, a compound comminuted fracture of the upper tibia and fibula, a massive fracture of the left hip and gross fractures involving six teeth; he was unable to walk without crutches. An award to Gordon of $467,000, reduced by remittitur[3] from $867,000, was affirmed by this court.
Certainly, there are differences between Gordon's injuries and Ms. Lanclos'. We refer to Gordon, not as authority for affirming the general damages award to Ms. Lanclos, but to assist us in determining whether the Lanclos award is so greatly disproportionate as to be clearly excessive. Considering Ms. Lanclos' injuries, her treatment, her hospitalization, the development of the pulmonary emboli, her residual disability, her inability to walk unassisted, and the mental trauma caused by the threat of the potentially fatal emboli, we conclude that the award of general damages is not so clearly excessive as to require reduction. It will be affirmed.

Effie Lanclos' Loss of Wages
The jury awarded $23,400 for loss of wages from December 15, 1975 to February, 1978, a period of approximately 26 months. Ms. Lanclos was employed as an insurance debit route sales person. According to the testimony of her supervisor, one Patrick David, she had been an excellent worker and had enjoyed a steady increase in earnings since March, 1974 when she began work under him. Her highest complete month of earnings was November, 1975, the month before the accident, when she earned $837.74. (P-24, TR. 1078).
While it is quite possible that Ms. Lanclos would have attained further increases, it is also possible that she would have suffered reverses as she did in March and April, 1975, when her commissions were much lower than other months (TR. 2278). The witness David estimated that Ms. Lanclos could attain $1,200 per month and that she could work until age seventy. Two of David's twenty-five agents were working past age sixty-five. (TR. 2276).
An award for past loss of earnings and for future loss of wages must be based on past performance and established facts.
*627 The possible increases in earnings and the possible work past age 65 must be regarded as speculation.
Viewing the evidence in the most favorable manner to Ms. Lanclos, since the issue involves reduction of an award, we find established a monthly wage of $838. However, she had automobile expenses of $330 per month, according to her 1975 tax return. (TR. 1639). Her net monthly loss would be $508 for 26 months giving her a net past loss of wages of $13,208. The judgment will be amended accordingly.
The allowance for future loss of wages, based on the figures above, would be $508 per month or $6,096 annually for eight years, the period from trial until Ms. Lanclos reaches age 65.
The present value of $6,096 for eight years with a 6% discount rate (LSA-R.S. 47:2405) is calculated by multiplying by a factor of 6.210, which is the present worth of $1 per year payable annually for eight years. (See Am.Jur.2d Desk Book, Doc. No. 133).[4] The resulting total is $37,876.16. Giving ample weight to the jury's discretion in fixing damages and also to the many variables which the jury may have considered, we hold that the largest possible award for loss of future wages is $50,000. The judgment will be amended accordingly.
Robert Lanclos for Effie Lanclos' Medical Expenses
The net award for future medical expenses of Effie Lanclos was $21,753.62.[5] The record does not contain evidence to support this amount. Dr. Tate testified that Ms. Lanclos is precluded from future surgery because of the danger of blood clots, a factor considered above in affirming the large award for general damages. The future medical expenses established at trial include only a $12 monthly office visit to Dr. Tate (TR. 2350) and a $10 monthly blood test. Ms. Lanclos' life expectancy[6] at the time of trial was 15.39. (LSA-R.S. 47:2405). An allowance of $5,000 for future medical is the largest that can be supported by the record; the judgment will be reduced to that amount.

Lois Bellard
Lois Bellard's total award by the jury was $219,000 for pain, suffering and disability. This lady, who was 77 at the time of the accident, suffered a "degloving" injury to her left leg and the fibula was broken in two places. "Degloving" means that the skin of the leg was peeled loose. It was necessary to do a skin graft and it was feared that amputation might be necessary. Ms. Bellard was hospitalized from December 15 until the following February 26. She is now ambulatory but cannot drive as well as before the accident and cannot kneel in church. (TR. 2325). Undoubtedly, she suffered greatly at the time of the accident and subsequently. Dr. Bordelon, who treated her also, gave an estimate of 30% residual disability of the left leg.
We have found no cases and have been cited to none which involve injuries similar to Ms. Bellard's and which award an amount remotely approaching $219,000 for general damages. The jury clearly abused its discretion. Therefore, we are required to reduce this award to the highest point which is reasonably within the discretion of the jury. Essentially, Ms. Bellard suffered a badly broken leg with the skin peeled loose. She required lengthy hospitalization but experienced a good recovery considering her age. The 30% disability is significant but, according to her doctors, it does not have great impact on her activities.
We believe the highest possible award is $150,000, and accordingly, the award to Ms. Bellard will be reduced to that amount. *628 Noah Bellard for Lois Bellard's Medical Expenses
Mr. Bellard received $15,702.95 (reduced from the jury award of $22,394.05, by the trial court) for his wife's past medical expenses. This amount is supported by the evidence and will be affirmed.
For the reasons assigned, the judgment of the trial court in these proceedings is affirmed, except that it is amended as follows:
(a) The judgment in favor of Effie R. Lanclos is reduced to the sum of $549,208.
(b) The judgment in favor of Robert Lanclos is reduced to $25,322.
(c) The judgment in favor of Lois Bellard is reduced to $150,000.
All judgments to bear legal interest from date of judicial demand until paid.
Costs of appeal are taxed half against plaintiff-appellees and half against Ranger Insurance Company.
AMENDED AND AFFIRMED.
GUIDRY, J., concurs and assigns written reasons.
GUIDRY, Judge, concurring.
I fully concur with my brethren in the reductions made in the awards for special damages and reluctantly concur in affirmation of the general damage award to Mrs. Lanclos and in the reduction of the general damage award of Mrs. Bellard to the sum of $150,000.00. Although I consider both awards for general damages, including that of Mrs. Bellard reduced to the sum of $150,000.00, to be inappropriate, on the basis of the evidence and in comparison with awards in other cases, I am unable to conclude that the awards made exceed the highest award which is within the discretion afforded the trier of fact as is required by Coco v. Winston Industries, Inc., 341 So.2d 332 (La. 1977).
Taking a given set of facts, I can conclude, albeit with some difficulty, what in my judgment constitutes a fair and just award. Likewise, taking a given set of facts, I can reach a decision as to whether or not, in my judgment, the quantum of an award is appropriate or inappropriate. However, I find it almost impossible, except in rare cases, to decide when an award is of such magnitude or so desperately low, that it exceeds the much discretion of the trier of fact to assess. The word "discretion" is defined in Webster's dictionary, unabridged, second edition, as the "liberty or power of deciding or acting without other control than one's own judgment". How is one to decide what, in a given case, should be the trier of fact's "own judgment" as to the highest or lowest amount awardable? Yet, the courts of appeal, under the principles announced in Coco, are required to make this determination and reach a conclusion as to whether or not the award can be reasonably supported by the evidence.
The assessment of damages is a judgment call and rarely will any two or more judges, given the same facts, in the exercise of their "own judgment", reach total agreement on the amount awardable. To go further and require agreement by a panel of appellate judges on an appropriate range of damages, i. e., the lowest to highest amount which is reasonably awardable on the basis of the evidence, I respectfully suggest is asking the impossible. This is perhaps best exemplified by Coco where on rehearing before the court of appeal, of the five judges, three fixed quantum at $140,000.00; one felt the quantum award should be $200,000.00; and the fifth considered $350,000.00 to be within the discretion of the trier of fact. On review by the Supreme Court, of the seven justices, four were in favor of reinstating the award to $350,000.00; one felt a liberal appraisal of plaintiff's claim supported an award of $200,000.00; and the remaining two agreed with the court of appeal. This indicates that under the facts in Coco, after conscientious inquiry by no less than thirteen judges, the "high" ranged between $140,000.00 and $350,000.00, a difference of $210,000.00. Since in Coco the issue before the court was whether or not the award exceeded the outer limits of the trial court's discretion one can only speculate as to what *629 might have been a legally acceptable award in the so called "low range".
I readily concede that under R.C.C. Article 1934, in the assessment of damages, "much discretion must be left to the judge or jury", and this is as it should be. However, I respectfully suggest that to require, before such an award can be amended, an appellate court must find, in addition to inappropriateness of the award, that either such award exceeds the highest or is less than the lowest possible award which should be made on the basis of the evidence, precludes effective and meaningful review of quantum awards by the courts of appeal and ultimately often results in the affirmation of inappropriate awards which do not afford substantial justice to the parties litigant. A striking example of the inequitable results which follow when the principles announced in Coco are followed is seen when one compares the result reached by this court in the instant case with that reached by this same court, albeit by a different panel, in the case of Hebert v. Missouri Pacific Railroad Company et al., 366 So.2d 608. In my view the general damage awards made in the two cases cannot possibly be reconciled although each was decided applying the principles of Coco.
In the instant case we affirm a $486,000.00 general damage award to a 55 year old lady, who although suffering a 30% disability of the body as a whole, will manage pretty well for the rest of her life. We also fix as the highest award possible, and accordingly grant Mrs. Bellard, 77 years of age, general damages in the sum of $150,000.00. In the Hebert case, we affirm, as perhaps low but within the trial court's discretion, a general damage award of $250,000.00 to a young man 17 years old, who suffered much more serious injuries and who although normal before the accident has severe brain damage and as a result he will remain in a depressed state, with suicidal tendencies, under constant psychiatric care for the rest of his life. Since we conclude that both awards are within the trial court's "much discretion" under Coco we must affirm, however, the question remains whether substantial justice has been done.
For the above and foregoing reasons I respectfully concur in the opinion and judgment of this court.
NOTES
[1] The Tate companies and Guillory were dismissed as defendants at the beginning of trial.
[2] We have viewed the slides, and, while they are unpleasant, we do not find them gruesome or inflammatory.
[3] Remittitur was not urged in the present case.
[4] There are other ways to calculate loss of future wages (See XXIV La. Bar Journal 119) but we choose the uncomplicated method of discounting at the statutory rate and we omit such considerations as inflation, income tax, and the like.
[5] $42,075.62 less past expenses of $20,322.
[6] Her birthdate is March 17, 1920. (TR. 2431).